[Civ. No. 1103.  First Appellate District.—December 27, 1912.]

JOSEPH W. McTIGUE, Plaintiff, Appellant, v. ARCTIC ICE CREAM SUPPLY COMPANY, Defendant, Respondent, and GEORGE W. MORSE et al., Codefendants.

Action on Contract to Stable Horses Against Corporation and Individual Defendant Jointly—Corporation not Liable—Prior Lease for Years.—In an action by the plaintiff as the proprietor of a livery stable, upon an alleged contract for the stabling of horses therein, charged to have been made with the corporation defendant and an individual defendant jointly, it appears from the record therein that no such joint contract was made, that the individual defendant confessed judgment for the amount claimed, and that the corporation was not liable thereon, since, prior to the making of such contract, it had made a lease of all its property and business to the individual defendant for the term of five years, in which it was provided that he should be responsible for all debts contracted by him, and could incur no debts on behalf of the corporation.

Construction and Effect of Lease—Untenable Contentions of Plaintiff.—The contentions of the plaintiff that the contract in controversy, though a lease in form, with the usual covenants, was not in fact a lease, but was in legal effect an agreement of partnership, and that however construed, it was an *ultra vires* act of the cor-

poration, and that in the dealings of the individual defendant with the plaintiff, he was acting in the capacity of an agent of the corporation, and that his contract with the plaintiff, was the contract of the corporation, were wholly untenable.

Id.—Validity of Lease by Corporation—Rule of Law—Legislative Restriction Upon Execution.—It is the rule of law in this state that an ordinary private corporation may lease its entire business, whenever such a course is necessary for the best interests of the corporation, stockholders, and creditors. The only legislative restriction placed upon the execution of such a lease is that the consent of at least two-thirds of the issued corporate capital stock must first be procured, and that such consent must be expressed, either in writing and acknowledged by such stockholders, and made a part of the lease, or by vote at a stockholders' meeting called for the purpose of considering and consenting to such lease.

Id.—Mere Lease by Corporation—Invalidity of Partnership' With Individual not Involved.—Where the instrument in question is one of mere lease by a corporation for a term of years, which expressly declares that it shall not be construed as constituting a partnership, no question is involved as to the invalidity of a partnership between a corporation and an individual, and such question need not be discussed.

Id.—Rent Reserved in Lease by Corporation—Percentage of Net Profits—Partnership not Established—Construction of Lease Against Partnership.—The provision in the corporation's lease of its business for a term of years that the rent reserved should be a sum equal to twenty-five per cent of the net profits of the business, did not in and of itself, establish a partnership relation with the lessee. As there is no express agreement to divide the profits, there is no implied agreement to share the losses. Not only are the express terms of such lease against any construction thereof as constituting a partnership, in that it provides that the division of the profits herein provided shall be construed merely as the method of ascertaining the rental to be paid; but also the idea of a permanent lease for a definite term of years is at war with the notion of such an indeterminate and fitful relation as a partnership.

Id.—Counterclaim by Corporation Defendant Against Plaintiff—Negotiation for Sale—Horses Wrongfully Withheld—Payment Obtained by Duress of Goods.—In the action by the plaintiff against the corporation defendant and its lessee to recover for the care of horses kept in plaintiff's stable, such corporation may plead, by way of counterclaim in such action, that before the commencement of the action it had negotiated for a sale of all of its business and property, including such horses, and that, in order to obtain the possession thereof for the purpose of such sale, it was compelled to make or permit a payment to effect the same, which was deemed

obtained by "duress of goods," and may be counterclaimed by the corporation defendant in such action.

Id.—Payment by Proposed Purchaser to Avoid Threatened Loss to Corporation—Payment Deemed by Corporation.—Where the purchaser refused to complete the proposed sale, the failure to complete which would have resulted in great loss and damage to the corporation, unless such horses were delivered, and in order to procure the delivery, it was compelled, under protest, to permit the proposed purchaser to make the necessary payment to secure the same, and deduct the same from the proposed purchase price, such payment must be deemed to have been made for the corporation, and consequently made by it, to justify its counterclaim therefor.

Id.—Lien for Services Performed on Personal Property—Creation by or for Owner Essential—Absence of Lien on Horses against Corporation.—In order to create a lien for services rendered upon personal property or for the care and keeping thereof, while lawfully in the possession of the claimant of such lien, under section 3051 of the Civil Code, it is essential that it should be created only by the act of the owner of the property sought to be charged, or by the act of another person duly authorized by the owner. It is held that, upon the facts of the present case, the plaintiff was entitled to no lien upon the horses in question for their care and keeping as against the corporation defendant, as its only contract was made with its lessee, who had no authority to charge the corporation with any debt.

Id.—General Rule as to Voluntary Payments—Qualification—Payment of Unlawful Demand Under Protest—Serious Loss to Owner from Delay.—The general rule of law that if a person knowingly submits to an illegal demand by paying that which is demanded, instead of invoking the remedy which the law affords against such demand, such payment will be deemed to be voluntary, is subject to the qualification, that in cases where the person making the demand obtains possession of another person's property, without first resorting to judicial proceedings to test its validity, payment under protest will be deemed compulsory, if the demand is unlawful, and the delay incident to the recovery of the property by legal proceedings would result in serious loss to the owner of the property.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   John J. Van Nostrand, Judge.

The facts are stated in the opinion of the court.

William P. Hubbard, for Appellant.

William J. Hayes, and S. J. Hankins, for Respondents.

LENNON, P. J.—Appeal from judgment and order denying motion for new trial.

In this action the plaintiff sought to recover from the defendants, Arctic Ice Cream Supply Company (a corporation) and George W. Morse, the sum of $921.35, claimed to be due to the plaintiff under the terms of an oral agreement alleged to have been entered into with the plaintiff, by the defendants Arctic Ice Cream Supply Company and Morse jointly, for the care, feed, and treatment of twelve horses belonging to the corporation, and which it was claimed were used by it in the transaction of its business at the time the indebtedness here sued on was incurred. Seven of the stockholders of the corporation defendant were joined as defendants in the action but the demurrers of five of them, viz., Eggers, Powers, Parker, Harbour, and Kellum were sustained by the lower court; and subsequently at the request of the plaintiff the action as to these particular defendants was dismissed. The record does not show that the defendants Binglay and Parry appeared in the action, or that any judgment was rendered for or against either of them. The defendant, Grace D. Ohnimus, sued as a stockholder, joined in the answer of the defendant corporation.

The trial was commenced March 30, 1910, and upon May 26th of the same year the defendant, George W. Morse, filed his consent to a judgment against him in the sum of $921.35. Judgment was rendered and entered accordingly, and after a trial of the action against the defendants Arctic Ice Cream Supply Company and Grace D. Ohnimus, judgment was rendered and entered on April 26, 1911, that the plaintiff take nothing by his action, and that the corporation defendant recover from the plaintiff on a counterclaim the sum of three hundred and fifty dollars.

Plaintiff's complaint alleges that the plaintiff was a livery stable proprietor, and among other things "that on or about the 26th day of July, 1908, plaintiff made and entered into an agreement with the defendants Arctic Ice Cream Supply Co. (a corporation), and George W. Morse, wherein and whereby the plaintiff, as such livery stable proprietor, agreed with said defendants to keep, care for, feed, treat and generally

provide for all horses to be furnished by the defendants at the rate of $20 per month; that under and by virtue of the terms of said agreement, between the 25th day of April, 1908, and the 24th day of July, 1909, the defendants furnished and the plaintiff kept, cared for, fed, treated and generally provided for twelve horses''; and that for such services ''there now remains due and unpaid from said defendants the sum of $921.35.''

The defendants Arctic Ice Cream Supply Co. and Grace D. Ohnimus by their answer denied these allegations and every other material allegation of the plaintiff's complaint.

Upon the trial of the case it was not disputed that the plaintiff had rendered the services sued for relating to the care and keeping of the horses; and upon this phase of the case the sole defense of the defendants, Arctic Ice Cream Supply Company and Grace D. Ohnimus, was framed upon the theory that the corporation was under no legal obligation to pay plaintiff's claim, because the services sued for were rendered after the execution of a lease of the corporation's business to the defendant Morse. In support of this defense there was offered and received in evidence a contract of lease made and entered into by the corporation defendant and the defendant George W. Morse, which lease it was shown was duly executed by the officers of the corporation, with the consent, expressed by vote at a stockholders' meeting, of stockholders holding of record more than two-thirds of the issued corporate capital stock. By this lease the corporation demised and let unto the said George W. Morse for the term of five years the real and personal property and the ice cream business of the corporation. The lease provided that said George W. Morse should pay to the Arctic Ice Cream Supply Company as rental, on the first days of January, April, and October through each year of the life of the lease, a sum equal to twenty-five per cent of the profits of the business. Such profits were to be estimated by deducting from the gross returns of the business the necessary cost of manufacturing and marketing its products. Although there was no agreement, express or implied, that the corporation should share the losses, if any, of the business, the lease concluded with the clause that ''Nothing herein shall be so construed as to constitute the business into a partnership or tenancy in common of said business; but the division of the

profits hereinbefore provided shall be construed merely as the method of ascertaining the rental to be paid.''

The evidence adduced at the trial, in addition to the lease above referred to, was practically without conflict, and fully supports the findings of the court made upon the main issues, which were to the effect that the plaintiff did not at any time enter into an agreement with the corporation defendant, or with said defendant and defendant Morse jointly, for the care and keep of said corporation's horses; that on or about the said twenty-fourth day of June, 1908, the corporation defendant leased its business and all of its personal property, including the horses mentioned in plaintiff's complaint, to the defendant, George W. Morse, for the period of five years, who thereupon went into the possession, use, and occupation of said business and personal property, and continued in such possession, use and occupation until about the first day of February, 1909; that it was provided in said lease that said Morse would be responsible for all of the debts contracted by him in carrying on said business; that at no time did the defendant Morse, as such lessee, have any authority, under the terms of said lease or otherwise, to incur debts of any kind for and on behalf of the corporation defendant; that the plaintiff attended a meeting of the stockholders of the corporation defendant on the sixteenth day of June, 1908, and with other stockholders, representing more than two-thirds of the issued corporate capital stock, voted in favor of a resolution authorizing the directors of the corporation defendant to execute the lease in question to the defendant Morse; that the plaintiff at all times had full knowledge of the terms and conditions of said lease, and had full knowledge that the defendant Morse was in possession of said business and said personal property as lessee, pursuant to the terms and conditions of said lease, and had no authority whatsoever to incur debts of any kind for or on behalf of the defendant corporation.

No claim is made here that the evidence adduced at the trial does not support these findings. The only point relied upon by the plaintiff for a reversal of the judgment rendered in favor of the defendants upon the issues raised by the complaint and the answer involves the construction and validity of the contract entered into by the corporation defendant and the defendant Morse.

It is the contention of the plaintiff that the contract in controversy, although designated a lease and containing covenants of forfeiture and re-entry and all of the usual covenants of a lease, was not in fact a lease, but was in its legal effect an agreement of copartnership. Plaintiff further contends that whether such contract be construed as a lease or an agreement of copartnership, it is in either event void as an *ultra vires* act of the corporation. From this it is argued that the defendant Morse, in his dealings with the plaintiff, was, in the absence of a valid agreement to the contrary, merely acting in the capacity of an agent of the corporation, and therefore Morse's contract with the plaintiff for the stabling of the horses was the contract of the corporation.

None of these contentions is tenable. It is the rule of law in this state that an ordinary private corporation may lease its entire business whenever such a course is necessary for the best interests of the corporation stockholders and creditors. The only legislative restriction placed upon the execution of such a lease is that the consent of the holders of at least two-thirds of the issued corporate capital stock must be first procured, and that such consent shall be expressed either in writing and acknowledged by such stockholders and made a part of the lease, or by vote at a stockholders' meeting called for the purpose of considering and consenting to such lease (Civ. Code, sec. 361a; *South Pasadena* v. *Pasadena Land etc. Co.*, 152 Cal. 579, [93 Pac. 490]; *Graham* v. *Pasadena Land & Water Co.*, 152 Cal. 596, [93 Pac. 498].)

The evidence in this case shows that the lease in question was executed in conformity with the statutory requirements.

In this connection it will be noted that the plaintiff does not claim that he was in ignorance of the existence and the scope and effect of the lease; or that his dealings with the defendant Morse were those of a creditor induced to give credit upon the strength of a real or an ostensible partnership. In the absence of such a claim, and in the presence of a decided preponderance of the evidence showing that the plaintiff relied solely upon the obligation and credit of the defendant Morse, we are not called upon to consider the means and methods employed in the conduct of the business of the Arctic Ice Cream Supply Company prior to and subsequent to the execution of the lease, in order to determine what would be the rights of

a creditor of Morse who was not informed as to the real relation of the parties to the lease. It may be conceded, as counsel for the plaintiff contends, that the decided weight of authority is to the effect that a corporation cannot lawfully enter into a copartnership agreement with another corporation nor with an individual, unless expressly empowered to do so by the terms of its charter. The rule in this behalf, however, need not be further discussed or considered, because we are satisfied that the contract in question here has none of the essentials of a partnership agreement, and is in our opinion just what it plainly purports to be, viz., a lease. The fact that the lease provided that the rent reserved should be a sum equal to twenty-five per cent of the net profits of the business did not, in and of itself, establish a partnership relation between the corporation defendant and the defendant Morse (*Smith* v. *Schultz,* 89 Cal. 527, [26 Pac. 1087]).

A partnership is defined to be "an association of two or more persons, for the purpose of carrying on business together, and dividing the profits between them" (Civ. Code, sec. 2395); and it is true generally that in the absence of a stipulation to the contrary "an agreement to divide the profits of a business implies an agreement for a corresponding division of its losses" (Civ. Code, sec. 2404).

In the present case, however, there was no agreement to divide the profits, and consequently there was no corresponding obligation to share the losses of the business. In the absence of such an obligation, express or implied, it cannot be said that a partnership agreement existed in the general or in any sense of the term. Moreover, a convincing and conclusive test of the existence of a partnership agreement is usually to be found in the intention of the parties as gathered from the instrument itself which it is claimed creates the partnership. Nowhere in the instrument under discussion is there to be found any intimation or suggestion that the corporation defendant was to be a general partner of the defendant Morse. On the contrary, that instrument expressly declares that nothing therein shall be construed as constituting a partnership; and upon the whole clearly indicates that a partnership was neither contemplated nor created. The instrument in question was in form and effect a lease for a definite term of years; and, as was said in the case of *Smith* v. *Schultz,* 89 Cal.

527, [26 Pac. 1087], "the idea of a permanent lease for a definite term of years is at war with the notion of such an indeterminate and fitful relation as a partnership."

In addition to its answer the defendant corporation pleaded a counterclaim against the plaintiff in effect for moneys had and received in the sum of three hundred and fifty dollars. The allegations of the counterclaim were in substance and effect these: On or about the first day of February, 1909, the corporation defendant, apparently with the consent of the defendant Morse, entered into an agreement to sell its business and all of its personal property to one C. O. Swanberg for the sum of five thousand dollars. Prior to and at the time of the sale the plaintiff had and held in his possession certain personal property belonging to the corporation defendant which was included in the sale to Swanberg. Plaintiff refused to relinquish the possession of the property unless he was paid the sum of three hundred and fifty dollars, which he claimed was due to him for its care and keep from the corporation defendant. Swanberg refused to complete the sale unless this particular property was delivered to him. The failure to consummate said sale would, it was alleged, have resulted in great loss and damage to the corporation defendant; and to save itself from such loss and damage it was "compelled . . . under protest to permit said C. O. Swanberg to pay to plaintiff the sum of $350, and deduct the same from the price originally agreed upon for the sale."

In brief, the counterclaim is founded upon the theory that the plaintiff obtained the three hundred and fifty dollars in question from the corporation defendant by "duress of goods." The lower court accepted this theory, and accordingly rendered judgment on the counterclaim in favor of the corporation defendant in the sum of three hundred and fifty dollars.

Upon the issue raised by the counterclaim it was the finding of the lower court in substance that the corporation defendant was compelled, in order to save itself from loss and damage, and "under protest, to permit" one C. O. Swanberg to pay over to the plaintiff the sum of three hundred and fifty dollars. Upon this phase of the case the record shows the evidence to be in effect as follows: On the day of the sale hereinbefore referred to of the corporation defendant's business to Swanberg,

it so happened that four horses and several wagons used by Morse in carrying on the business of the Arctic Ice Cream Supply Company, and previously stabled with the plaintiff under a contract with Morse, were not put to work and consequently remained in the stable. The plaintiff held this particular property, which was valued at three hundred and fifty dollars, under a claim of lien for services rendered in its care and keep, and refused to deliver it either to Swanberg or the corporation defendant except upon payment of a sum of money equal to the value of the property on account of the entire sum which plaintiff claimed was due to him under his agreement with the defendant Morse. The plaintiff refused to recede from this position, and Swanberg threatened to abandon the purchase of the corporation defendant's business and assets unless the particular property in question was immediately released and delivered to him. Thereupon the corporation defendant consummated the sale to Swanberg by permitting him, under protest, to pay plaintiff's claim and deduct the amount thereof from the purchase price of the property previously agreed upon between them.

The sufficiency of the evidence to support the findings of the trial court upon this phase of the case is assailed by counsel for plaintiff. In this behalf it is contended that plaintiff's claim was satisfied by Swanberg and not by the corporation defendant; that in either event the payment of plaintiff's claim was a voluntary payment, and finally, that the plaintiff, in retaining possession of the property in question, and making demand for a partial payment of the debt due to him from Morse, was simply exercising the right given him by section 3051 of the Civil Code, of claiming and maintaining a lien upon property lawfully in his possession for services rendered in the care thereof.

The first of these contentions may be disposed of with the statement that the evidence shows clearly that the payment of the plaintiff's claim by Swanberg was for and on account of the corporation defendant, and was therefore, in effect, a payment by the corporation defendant.

Upon the facts of the present case plaintiff was not entitled to a lien upon the property in question as against the corporation defendant. While it is not disputed that plaintiff rendered the services upon which his claim of lien was

founded, the evidence upon the whole case shows without conflict that plaintiff's contract for the care and keep of the horses and other property upon which a lien was claimed was made solely with the defendant Morse. Plaintiff was fully informed of the existence of the lease from the corporation defendant to the defendant Morse, and knew that, under the terms of the lease, Morse had no authority to incur debts against the corporation defendant or its property. That the plaintiff knowingly gave credit solely to Morse, and did not look to the corporation defendant or its property for the payment of the claim in controversy, is evidenced by plaintiff's statement to that effect which was made at a stockholders' meeting of the corporation, when the subject of Morse's care and keep of the corporation property was under discussion. Plaintiff's knowledge of the fact that Morse was only the lessee of the property in question without authority to incur debts against the corporation or to create a lien against its property, brings the present case squarely within the rule declared in the case of *Lowe* v. *Woods,* 100 Cal. 408, [38 Am. St. Rep. 301, 34 Pac. 959], where it was said, in effect, that the lien provided by section 3051 of the Civil Code can be created only by the act of the owner of the property sought to be charged, or by the act of a person duly authorized to act for the owner.

The contention that the satisfaction of plaintiff's claim constituted a voluntary payment is founded upon the theory that the corporation defendant, if it had been so disposed, might have contested plaintiff's right to a lien in an action at law, not only for the recovery of the possession of the property, but for damages as well for the detention thereof. From this it is argued that, inasmuch as the corporation did not see fit to stand upon its legal rights but yielded to the demand of plaintiff, it brought itself within the general rule of law, that if a person knowingly submits to an illegal demand by paying that which is demanded, instead of invoking the remedy which the law affords against such demand, such payment will be deemed to be voluntary.

This general rule, however, is subject to the qualification that in cases where the person making the demand obtains possession of the property of another, without first having had resort to judicial proceedings to test the validity of his

demand, payment under protest will be considered compulsory, and the money so paid can be recovered back, if the demand be unlawful, and the delay necessarily incident to the recovery of the property by legal process would result in serious loss to the owner of the property (*Fargusson* v. *Winslow,* 34 Minn. 384, [25 N. W. 942]; *State* v. *Nelson,* 41 Minn. 25, [4 L. R. A. 300, 42 N. W. 548]; *Mearkle* v. *Board of County Commrs.,* 44 Minn. 546, [47 N. W. 165]; *De Graff* v. *Board of County Commrs.,* 46 Minn. 319, [48 N. W. 1135]).

In the present case the evidence shows that the situation of the corporation defendant was such that if it had failed to secure an immediate release of the property in question, it would have sustained serious, perhaps irreparable loss, which could not have been avoided or remedied by resorting to an action at law, and therefore it cannot be held that the satisfaction of the plaintiff's demand constituted a voluntary payment.

The judgment and order appealed from are affirmed.

Kerrigan, J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal, on January 24, 1913, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1913.