[L. A. No. 6553. In Bank.—October 5, 1921.]

LAWRENCE ARMSTRONG FRY, Appellant, v. TITLE INSURANCE & TRUST COMPANY (a Corporation), Respondent.

[1] SLANDER OF TITLE—VENDOR AND VENDEE—GUARANTY OF TITLE.— In an action by a vendor against a title insurance company for slander of title, where it appears from the complaint that the plaintiff presented to his vendee a duplicate certificate of title issued by the registrar under the Torrens land law, that the purchaser demanded as additional assurance of title a guaranty of the defendant, and this the plaintiff agreed to furnish, that the

defendant declined to furnish such a guaranty of title unless a certain judgment of record was specifically released, that the plaintiff agreed to secure such release, and paid a certain sum for such purpose to the defendant, that thereupon the defendant wrote its guaranty of the title to the purchaser, and the plaintiff secured the purchase money, the vendor is not entitled to recover the amount which the defendant required him to pay as a condition of entering into a guaranty with a third person, plaintiff's vendee, leaving the defendant obligated by its guaranty.

APPEAL from a judgment of the Superior Court of Los Angeles County. Dana R. Weller, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jas. W. Bell for Appellant.

Charles H. Brock and J. N. Hastings for Respondent.

WILBUR, J.—This is an action to recover one thousand dollars damages for slander of title. The defendant interposed a general demurrer to the complaint, which was sustained and judgment entered accordingly, from which plaintiff appeals. The main question thus presented for our consideration is as to whether or not the complaint states facts sufficient to state a cause of action. The slander complained of is alleged as follows:

"That on the thirtieth day of December, 1919 . . . the defendant maliciously and without cause spoke in the presence of Jacob Bosma and others of and concerning the plaintiff and his property as follows: 'That said property was subject to the lien of a judgment for $5479.65 plus costs and attorneys' fees, and that said title could not be transferred free and clear until the release of said judgment lien,' " and "That the said statement was false, which defendant then and there well knew." .

The other allegations of the complaint may be summarized as follows: The defendant is engaged in the business of searching titles; the plaintiff and one Jacob Bosma entered into a written contract whereby plaintiff agreed to sell to Bosma a certain piece of real estate for the consideration of four thousand five hundred dollars and to furnish in connection with such sale a certificate of title from the defendant showing said property to be free and clear of all

encumbrances. The plaintiff was the owner of the fee-simple title "subject only to" a mortgage of fourteen thousand dollars and certain street proceedings. "That plaintiff's title . . . was evidenced by registrar's original and owner's duplicate certificates of title No. 7926, dated November 29, 1919, issued pursuant to the provisions and requirements of the law enacted by the people of the State of California on the third day of November, 1914, under the reserved legislative power, known as the initiative, entitled 'An act to amend an act entitled "An act for the certification of land titles and the simplification of the transfer of real estate," approved March 17, 1897,' and brought under first registration by certificate No. C–4318 on the first day of May, 1918." That the plaintiff deposited with the defendant his owner's duplicate of title, number 7926, together with a deed to Bosma and releases of the encumbrances "and instructed defendant to deliver an owner's duplicate certificate to the said Bosma together with its certificate showing the said title to be vested in him free and clear of all encumbrances, and thereupon to turn over to plaintiff the balance of said purchase price, and the said Bosma joined in said instructions." That the said defendant, with the consent of plaintiff, retained the sum of one thousand dollars out of the money so deposited as aforesaid for the purpose of procuring a release of said property from the said alleged judgment lien, and plaintiff consented thereto solely on the representation of the defendant that there was such a lien, and on the further representation of the defendant that it would not issue its said certificate showing said property free and clear of encumbrances unless a release of said alleged judgment lien be procured, and that it could and would procure such release for the sum of one thousand dollars. That thereupon the plaintiff sought to obtain from the said Bosma a rescission of said contract; but the said Bosma refused to consent to a rescission thereof; and notified plaintiff that he would insist upon a specific performance of all its terms and conditions and of the issuance of the said certificate by defendant title company showing said property to be vested in him free and clear of all encumbrances, including said alleged judgment lien, and also at the same time notified plaintiff that any unusual delay in completing said transaction would

cause him loss and damage in excess of one thousand dollars. That plaintiff thereupon sought legal advice, and, after stating all the facts and circumstances fairly and fully to his attorney, was advised that said contract could be specifically enforced by the said Bosma. That solely by reason of the facts and circumstances as herein alleged, plaintiff yielded to the demand of the defendant and authorized it to retain the sum of one thousand dollars out of the purchase price of said property and to close the transaction in accordance with instructions theretofore given. That the defendant during all the times mentioned in the complaint, "maliciously represented that the said registration law under which plaintiff's title or said property was registered was invalid and unsafe and that the defendant would not and did not recognize said law nor attach any force or effect thereto in its said business of making reports and issuing contracts of guaranty of title."

It is not alleged that there was no judgment for the amount of $5,479.65 of record in the county recorder's office, or in the office of the county clerk, except as such fact may be inferred from the plaintiff's allegation that the statement of the defendant, "That the property was subject to the lien of a judgment," etc., was "false, which the defendant then and there well knew." Taking the complaint as a whole, it is apparent that the plaintiff was claiming, as he now does, that the real property was not subject to any liens not shown on the registrar's certificate and that the defendant "maliciously" claimed that the certificate was not conclusive because the law for its issuance was invalid. The plaintiff's allegation that defendant's statement as to the judgment lien is false evidently takes issue with the defendant upon the validity of the lien, rather than upon the existence of the judgment. That this is the proper construction of the complaint is made manifest by the statements of the attorney who drew it, made in his brief on behalf of appellant in this court, wherein he states as follows:

"The amended complaint alleges that there was no *judgment lien* as claimed by defendant and that the defendant 'maliciously represented that said registration law under which plaintiff's title to said property was registered was invalid,' etc. In view of the decisions of this court in

*Robinson* v. *Kerrigan,* 151 Cal. 42, [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129], and in the *Application of Scott,* 182 Cal. 83, [187 Pac. 9], and of the appellate court, second division, in the *Application of Julius Seick* (Cal. App.), 189 Pac. 314 (Civ. No. 2559), decided February 26, 1920, we believe that the defendant merits the charge of malice.

"Section 91 of the Land Registration Act, Stats. 1915, page 1932, provides: 'No judgment, or decree, or order of any court shall be a lien on or in anywise affect registered land or any estate or interest therein until a certified copy of such judgment, decree or order under the hand and official seal of the clerk of the court in which the same is of record is filed in the office of the registrar and a memorial of the same is entered on the register of the last certificate of the title to be affected.'

"In the *Application of Seick, supra,* the court, in construing section 77 of the same act requiring notice of tax sale to be filed with the registrar within five days, the contention being that the statute is directory and not mandatory, says: 'We cannot accede to this construction of the plain and unambiguous language of 'the law.' And again the court says in the same opinion:

"'The prime purpose of the Torrens law is that there shall be in the registrar's office in the book known as the "register of titles" a leaf or folium to which any person dealing with any particular piece of land that has been brought under the act may look in order to ascertain the exact condition of the title before purchasing, leasing or loaning money secured by mortgage.'

"All of the allegations of the amended complaint for the purpose of the demurrer are to be taken as true. It is clear, therefore, that the amended complaint states a cause of action for slander of title, and if the proof sustains the allegations plaintiff is entitled to recover."

It is apparent from a reference to the cases cited by appellant in this paragraph of his brief, and from the brief itself, that the allegation of the plaintiff that the statement of the defendant was "maliciously false" was made in the complaint because the Torrens land law is plain in its terms, and has been upheld by the courts in the cases cited, and that, therefore, the statement by the defendant of the con-

dition of the title could not have been an honest expression of opinion. [1] In short, the situation disclosed by the complaint is as follows: The plaintiff presented to his vendee a duplicate certificate of title issued by the registrar under the Torrens land law; the purchaser demanded as additional assurance of title a guaranty of the defendant and this the plaintiff agreed to furnish; the defendant declined to furnish such a guaranty of title unless a judgment of $5,479.65 of record was specifically released; the plaintiff agreed to secure such release, and paid one thousand dollars for such purpose to the defendant; thereupon the defendant wrote its guaranty of the title to the purchaser, and the plaintiff secured the purchase money; he now seeks to recover the one thousand dollars, which the defendant required him to pay as a condition of entering into a guaranty with a third person, plaintiff's vendee, leaving the defendant obligated by its guaranty. If the defendant had retained the one thousand dollars as a consideration for its outstanding guaranty, could the plaintiff recover it and his purchaser retain the guaranty secured by the payment of the thousand dollars? Obviously not. If not, it is even more clear that where the one thousand dollars was paid out to so perfect the title that the purchaser would accept it, and the defendant guarantee it, the plaintiff having consented to this transaction and enjoyed the benefit of it, ought not be allowed to recover the money he paid out in order to get the benefit.

The question as to whether the Torrens land law was valid or invalid, or whether the defendant honestly so believed, is entirely beside the question. The plaintiff knew all about his title; the purchaser did also. Both knew of the registrar's certificate, and they differed as to its effect, the purchaser being unwilling to accept the certificate alone. Plaintiff contracted to buy for his purchaser a guaranty issued by the defendant. The defendant sold to plaintiff the required guaranty, for its usual fees, plus one thousand dollars, to be paid to a lien claimant. Plaintiff agreed to pay this amount after securing the advice of an attorney and with full knowledge of the facts solely because he felt bound to his purchaser to do so, and being fully aware that defendant's contention was based upon a "maliciously," wrong and "false" view as to the effect of a statute. It is,

therefore, clear that the loss or damage to the plaintiff was due, not to the interference by the defendant with the contractual rights and obligations of the parties to the contract, nor to the prevention of any sale, but to the defendant's insistence that it would not furnish a certificate of title unless the plaintiff conformed to its demand for the satisfaction of the judgment lien.

The defendant had a right to fix the terms upon which it would enter into the contract of guaranty (*Allen* v. *Railroad Com.*, 179 Cal. 68, [8 A. L. R. 249, 175 Pac. 466]; *Taggert* v. *Graham*, 39 Cal. App. 621, [179 Pac. 688]). The damages alleged by plaintiff did not result from a slander of title. In the case of *Burkett* v. *Griffith*, 90 Cal. 532, [25 Am. St. Rep. 151, 13 L. R. A. 707, 27 Pac. 527] an agreement of sale had been entered into between the plaintiff and his vendee. The vendee, because of the alleged slander of title, declined to carry out his agreement. It was held that the plaintiff could not recover. This court there stated the rule as follows: ''In an action like the present, the plaintiff can recover only such damage as he may have sustained by reason of an intending purchaser being prevented from making the contract; but the complaint herein shows that whatever statements or declarations were made by the defendant prior to the making of the contract did not have the effect to prevent Sketchley from entering into the same, and those which he made thereafter have not caused the plaintiff any damage which can be said to have resulted therefrom. We know of no case in which it has been held that when the plaintiff has a valid contract of sale he can recover damages for its breach against one whose words, however false and malicious, have induced the other contracting party to violate such agreement.'' The court held that if the purchaser was released by the vendor on account of the slander, such release was his own voluntary act, and the vendor could not recover (Id., p. 541), if not, that he had not been damaged. Here the plaintiff with less justice is complaining, not that he lost a sale, but that he was forced to complete one. It is clear in any view of the case that the statement of the defendant as to the condition of plaintiff's title was not the proximate cause of his loss, which resulted from his voluntary payment, with full knowledge of all the facts. (*Burkett* v. *Griffith*, *supra*. See, also, as to voluntary payments,

*Brumagim* v. *Tillinghast,* 18 Cal. 265–271, [79 Am. Dec.
176]; *Burke* v. *Gould,* 105 Cal. 277, [38 Pac. 733].)

We cannot see that plaintiff has made out a case of pay-
ment under duress. Plaintiff in this behalf relies upon
*Burke* v. *Gould, supra,* and *McTigue* v. *Arctic Ice Cream Co.,*
20 Cal. App. 708, 718, [130 Pac. 165]. These cases recog-
nize that the possessor of personal property may exercise
duress over the owner in certain cases by unlawfully re-
fusing to surrender the possession thereof to the owner un-
til his illegal demands are met, and have no applicability
to the facts of this case, for the defendant had no possession
of any property which it refused to deliver. The payment
made by plaintiff was not made to secure his property from
the defendant, but to secure a contract of guaranty from the
defendant which it would not otherwise have entered into.

Judgment affirmed.

Angellotti, C. J., Lennon, J., Lawlor, J., Sloane, J., and
Shurtleff, J., concurred.