### OGUS, RABINOVICH & OGUS CO. v. FOLEY BROS. DRY GOODS CO.*
(No. 8035.)

(Court of Civil Appeals of Texas.  Galveston. Jan. 21, 1922.  Rehearing Denied April 6, 1922.)

1. Corporations ⊗➝379—Cannot form partnership.

A corporation cannot form a partnership with another corporation or an individual.

2. Partnership ⊗➝8—Lease of floor space for percentage of net sales held not to create partnership.

A floor space in a store for a percentage of net sales, but not less than a given sum annually and a like percentage of all business in excess of a certain amount, *held* not to create a partnership, in that there was no sharing in the profits or losses; lessor being entitled to the agreed percentage of net sales regardless of whether lessee made a profit.

3. Partnership ⊗➝9—No partnership without joint interest in profits as distinguished from compensation for services.

There can be no business partnership unless there is a joint interest in the profits as such, and not merely as compensation for services.

4. Corporations ⊗➝459—Lease of floor space by dry goods company to millinery company not ultra vires.

A dry goods company's lease of floor space to a millinery company for a percentage of the latter's net sales to be deducted from its total receipts by lessor is not ultra vires.

5. Landlord and tenant ⊗➝49(1)—Corporation securing use of floor space for stated term at designated compensation is liable for abandonment as for breach of lease.

A corporation securing the use and possession of floor space in another corporation's building and the use of facilities and services incidental thereto for a stated term in consideration of a designated compensation is liable for failure to occupy the space for the designated time as for a breach of a lease whether or not the contract may be technically termed such.

---

⊗➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 24, 1922.

**6. Landlord and tenant ⬥⟿48(½)—Sale of majority of lessor's stock and purchaser's advertised intention of changing corporate name held not a breach of contract leasing floor space.**

Neither a corporation's sale of the majority of its stock nor the purchaser's advertised intention of changing the corporate name was a breach of a contract leasing floor space to another corporation for the display and sale of its goods, in the absence of evidence that the personal popularity of lessor's principal owners, under whose name the corporation was known, was one of the considerations for the execution of the contract.

**7. Landlord and tenant ⬥⟿211(1) — Lessee wrongfully abandoning use of leased floor space not entitled to deduction from rent because of lessor's not having to furnish light, heat, and other incidental facilities.**

A corporation which violated its contract to occupy floor space leased by it from another corporation for the display and sale of its goods was not entitled to any deduction from the amount due under such contract because of any advantage gained by lessor by not having to furnish lighting for window display, show cases, etc., heat and elevator service and other incidental facilities, including the use of a show window, as agreed, especially in the absence of evidence that the cost of such services in the conduct of lessor's own business was lessened.

**8. Landlord and tenant ⬥⟿211(1)—Lessor's use of window space vacated by lessee held not a re-entry.**

Where a lessee of floor and window space for the sale and display of its goods abandoned the use thereof prior to the expiration of the lease, lessor's use of the window space gave lessee no right against lessor, where its use was necessary to protect lessor's business from injury.

**9. Landlord and tenant ⬥⟿80(3)—Sublease held not unenforceable because lessor's landlord did not consent.**

A lease of floor space was not unenforceable because lessor had not obtained the consent of its lessor to sublet where the sublessee was never disturbed in its possession, and no objection was made to its use of the property by lessor's landlord.

**10. Landlord and tenant ⬥⟿195(2) — Lessor held not obligated to lease to another for lessee's protection after it abandoned premises.**

A lessor of floor space in a dry goods store for the display and sale of millinery was under no obligation to lease the premises to another for lessee's protection after it abandoned the premises.

On Motion for Rehearing.

**11. Licenses ⬥⟿44(2), 53—Contract for use of floor and window space held only license, and not a lease, as to window space.**

Under a contract for floor space in a dry goods store subject to its rules and regulations with respect to opening and closing for business, with the right to use 10 feet of window space, no designated part of which was set apart, no *leasehold* was acquired in any of the space, so that lessee was not entitled to compensation for the value of the window space when used by lessor after it abandoned the premises, its right thereto being a mere license while it continued to occupy the floor space, and the rule against subletting without the owner's consent was inapplicable.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by the Foley Bros. Dry Goods Company against the Ogus, Rabinovich & Ogus Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, and Garrison, Pollard, Morris & Berry, all of Houston, and Darrow, Sissman, Popham & Carlin, of Chicago, Ill., for appellant.

Sam Streetman and Maurice Epstein, both of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by the appellee, a private corporation organized under the laws of this state, against the appellant, a private corporation organized under the laws of Illinois, to recover the sum of $13,125, and interest thereon, alleged to be due upon a lease contract executed by appellant and appellee as lessee and lessor, respectively.

The petition, after alleging the execution of the contract, which was attached to the petition as an exhibit, and by the terms of which the plaintiff demised and leased to the defendant, for a term of five years, beginning on January 1, 1914, certain floor space in the store building occupied by plaintiff as its place of business in the city of Houston and described in the contract, for an agreed rental of not less than $10,500 per year, payable in equal monthly installments, contains the following allegations:

"That under the terms of said lease said defendant entered into possession of said premises, and occupied the same and paid the rental as in said contract stipulated up to and during the month of September, 1917, but has wholly and completely failed to pay the rental for said premises in accordance with the terms of said written contract for the balance of the term of said lease, to wit, from October 1, 1917, to December 31, 1918; that under the terms of said contract defendant agreed and promised to pay plaintiff the minimum rental of $875 per month for the term of said lease, and that there is now due and owing plaintiff by reason of said defendant's default in the payment of rent for the period beginning October 1, 1917, and ending December 31, 1918, at the rate of $875 per month, the sum of $13,125; that the said defendant has been often requested to make payment of said indebtedness, in accordance with the terms of said contract entered into between the parties hereto; said defendant has failed and refused to pay the same or any

⬥⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(241 S.W.)

part thereof, although payment has often been demanded.

"Plaintiff further alleges that it has at all times been ready and willing to perform, and has performed, all of its obligations under said written contract, but that defendant nevertheless did on the 1st day of October, 1917, without any excuse or justification therefor, abandon the premises leased to it, and has failed and refused since that date to pay the stipulated rent for the balance of the term of said lease as provided in said contract; that said abandonment of the premises, and the nonpayment of rent therefor, were in violation of the contract existing between the parties hereto; that during said entire period, to wit, from October 1, 1917, to December 31, 1918, said plaintiff has kept and reserved said premises for the use and occupation of said defendant in accordance with the terms of said contract, but said defendant has failed and refused to use or occupy said premises or to pay the rent therefor as stipulated in said contract."

The prayer of the petition is for judgment for the sum of $13,125 with interest on each month's installment of said sum from the time the same became due under the terms of the contract.

After its general demurrer and denial, the defendant specially pleaded that plaintiff was not entitled to recover as to the executory portion of the contract, to wit, October 1, 1917, to December 31, 1918, because the contract did not create a simple landlord and tenant relationship, but did create partnership or quasi partnership relationship between two corporations, and was therefore ultra vires and against the public policy of the state of Texas, and no recovery could be predicated upon any executory portion of the contract. Defendant further replied that the conduct of the plaintiff in its campaign of advertising, closing its store, etc., constituted constructive eviction, which, coupled with abandonment of the premises by the defendant, terminated any liability of the defendant. Defendant further pleaded a re-entry by the plaintiff on a part of the premises, which, in law, would constitute a re-entry as to the entire space, and further that the plaintiff, being a lessee, was prohibited by statute and an express provision of its lease from subletting, and therefore the contract between plaintiff and defendant was unilateral, and plaintiff was not entitled to recover thereon as to the executory portion thereof, and further that the plaintiff had incorrectly pleaded its measure of damages, having brought suit for rent, whereas, if entitled to recover at all, it was only entitled to recover the difference between the contractual consideration and the reasonable value of the services to be rendered by the plaintiff to defendant under the contract.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff for the full amount claimed in the petition.

As most, if not all, of the material questions raised by this appeal involve a construction of the contract upon which the suit was brought, we deem it advisable to give the terms of the contract at length. After reciting the names and domicile of the parties, the contract contains the following provisions:

"The said lessor [plaintiff] has this date demised and leased to the lessee [defendant] and given it the sole and exclusive privilege for the purpose of conducting thereon a department of the sale at retail of ladies', misses' and children's millinery and all its by-products, a space about —— square feet on the second floor of its building in the ——, as per blueprint attached hereto and marked Exhibit A, and additional space for workroom and stockroom on third floor, as per blueprint attached hereto and marked Exhibit B, provided lessors reserve the right to sell baby caps, velvet, ribbons, ornaments, and other merchandise as is now usually and customarily sold in other department of their store.

"2. In addition to the premises hereby leased, the said lessee shall also have the right to use a space of at least ten (10) feet window frontage on Main street for displaying its wares and shall also have the right to display hats on models and figures in all of the show windows at the discretion and direction of the lessor.

"3. The term of this lease shall be for a period of five (5) years, beginning January 1, 1914, and ending December 31, 1918.

"4. The lessee, in consideration of the premises hereby leased, agrees to pay to the lessor an amount equal to fifteen (15) per cent. on all net sales made by the lessee on above premises, and further agrees that the minimum rental so paid to the lessor shall be no less than ten thousand five hundred ($10,500.00) dollars per annum, payable in twelve (12) equal monthly installments. Should the business of the lessee during any fiscal year exceed the sum of seventy thousand ($70,000.00) dollars, the lessee agrees to pay the lessor fifteen (15) per cent. on all such business above seventy thousand ($70,000.00) dollars, which shall be deducted by the lessor in the monthly settlement whenever such sales shall have reached said sum of $70,000.00 during any one year.

"5. The lessee further agrees that it will advertise its goods to the extent of at least four (4%) per cent. of its sales during each fiscal year, and during the entire time and term of this agreement. All advertising by the lessee of its wares and merchandise shall be made under the name of the lessor only. The lessee shall be chargeable with and pay monthly for all its advertising at absolute net cost to the lessor. When advertising jointly with lessor, the lessee will pay its pro rata share of head lines. Lessee shall pay its proportionate share on special advertising contracts, such as premium stamps, refunded railroad fares to customers, newspaper contracts, etc., that may be entered into by lessor.

"6. The lessor further shall provide all the necessary lighting for the proper conduct of the business of the lessee, also furnish all lights for window display, showcases, workrooms and stockrooms.

"7. The lessor shall furnish heat and elevator service, freight and passenger, for the premises hereby leased to the lessee in the proper manner, and suitable for the conducting of the business of lessee, as same is now furnished, but in the event there shall be any breakage or any other cause for which said lessor is not responsible, whereby such heat or elevator service cannot be furnished, such failure to furnish heat or elevator service shall not operate as a breach of this contract, or render the lessor liable in damages to the lessee.

"8. It is further understood between the parties hereto that, in case of any controversy between lessee or its employés with customers, such controversies shall be referred at once to said lessor, or its officers, whose decision in the premises shall be final, and that under this provision the lessor is authorized by lessee to refund money or to make allowances to customers of lessee, and to adjust the aforesaid controversies in any reasonable manner.

"9. The lessee agrees that its employés shall abide by and conform to the rules and regulations which may from time to time be fixed and established by the lessor for the government of its own employés, and the said lessee shall not at any time make any rules or regulations for its employés which shall be in conflict with the rules and regulations of the lessor.

"10. Said lessor further agrees to furnish janitor and porter service to maintain the premises hereby leased in proper and first class form, shape, and condition.

"11. The lessor agrees to furnish and pay for all water to be used by said lessee for the proper conduct of its business.

"12. The lessor shall receive all merchandise sent by freight or consigned to the said lessee, provided such merchandise indicates by its marks that it is intended for the lessee. It is understood, however, that the lessee shall pay all of the freight, express and drayage charges on said merchandise.

"13. The lessor agrees to provide the lessee without extra charge therefor, wrapping and tissue paper and twine, sales checks in triplicate, all printed forms used by lessor in its other departments, all stationery, telephone service, advertising service, window trimmer service, wrapping girls and cashier, but all boxes, paper bags and out-of-town telephone calls shall be provided by the lessee at its own expense. The location of the wrapping station and cashier's desk to be situated in the millinery department, or in some other convenient part of lessor's store, at lessor's discretion.

"14. The lessee shall employ its own assistants and clerks, at its own expense and under its own contract, except wrapping girls and cashier, as provided in paragraph 13, above.

"15. Said lessor shall deliver free of charge all wares and merchandise sold to customers by the lessee in Houston or its suburbs, where the general city deliveries of lessor now reach. All parcel post charges and express charges on sales made by lessee shall be paid by the lessee.

"16. Each of the parties hereto shall at all times use its best efforts to further the interest of the other party, and will endeavor, so far as it can, to have its employés work to this end.

"17. The time for opening and closing the business carried on as herein contemplated shall be controlled by the rules and regulations of the said lessor, and the giving out and control of the keys shall be governed exclusively by the said lessor.

"18. The business of which this contract is the subject shall be conducted under the name and style of the lessor. The lessee agrees that it will advertise its business only under the name of Foley Bros. Dry Goods Company, and that all signs placed in said building of lessor shall bear the name of Foley Bros. Dry Goods Company only; that all bills for goods sold shall be issued in the name of the lessor only, and all wrapping paper, boxes and paper bags shall bear the name of the lessor only, and none other, and all communications of every kind addressed to customers shall be in the name of Foley Bros. Dry Goods Company, and none other.

"19. All charge sales must be approved by lessor at its discretion, and treated as a cash sale for the purpose of settlement with lessee.

"20. All the moneys received by the lessee in the sale of its merchandise shall be paid at the time of sale to the cashier of lessor, who shall keep a full, true and complete record, open and available to lessee, of all such receipts. The lessor agrees to discharge by voucher of lessee only, or lessee's properly appointed executive, all expenses necessary for the conduct of the business of the lessee, and lessor, upon deducting all such disbursements and the one-twelfth ($1/12$) part of the said sum of ten thousand ($10,000.00) dollars for rent and the percentage of sales, if any, above the sum of $70,000.00 for any one year, and all other expenses, shall pay to the lessee at Houston, Texas, the remaining balance on or before the fifteenth (15th) day of each month for all sales made during the preceding month. Settlement to be made either in New York or Chicago exchange."

In the twenty-first paragraph the lessee assumes the risk of damage to property.

"22. The lessor agrees to keep the walls, ceiling, and floor of the said premises in good repair and condition during the term of this agreement, and lessor further agrees to furnish when necessary the proper electric fans and fan service for lessee's department."

Paragraph 23 provides for the termination of the contract in the event of destruction of the building.

"24. The lessee shall have the right to use the present fixtures now located in the millinery department, and may, if it so desires, remodel the same at its own expense, and may place new fixtures in said millinery department, but all such fixtures shall be paid for and owned by the lessee subject to the conditions of the lease on the building occupied by the millinery department.

"25. In the event the lease on the property in which the millinery department is now located cannot be renewed by the lessor, then the lessor agrees to give the lessee all of the third floor of their Main street building as space for such millinery department, except the space now used for the corset department and gen-

eral offices, and lessor shall pay expense of moving said. millinery department, it being understood that said lease expires on the 30th day of June, 1915.

"26. The lessee agrees and binds itself to purchase from the lessor all the stock in the millinery department of the Foley Bros. Dry Goods Company, on a basis of sixty-six and two-thirds (66⅔%) per cent. of cost, stock to be taken on the first day of January, 1914, and payments to be made for said stock as soon as the amount of stock is ascertained and the cost thereof.

"27. This agreement is made conditional upon the present lease held by lessor upon their store buildings, and, in the event said lease is terminated by some cause beyond the control of lessor, then this contract shall likewise terminate.

"28. In the event of any dispute between the lessor and lessee's local manager, the. lessee agrees to remedy such disputed matter, provided, however, that lessor gives lessee thirty (30) days' notice in writing to do so."

The record discloses the following facts: In the fall of 1913 the appellant, an Illinois corporation, engaged in the retail millinery business, and, desiring to open a branch establishment for the retail of its goods in the city of Houston, entered into negotiations with reference thereto with Foley Bros. Dry Goods Company, a Texas corporation, engaged in the retail merchandise business in Houston. The principal owners and leading spirits in the business of Foley Bros. Dry Goods Company were Pat and Jim Foley, both of whom had long been engaged in the retail merchandise business in the city of Houston, Tex., and were well and favorably known to the purchasing public of Houston. As a result of these negotiations, on November 4, 1913, a contract was executed, and pursuant thereto there was conducted a retail millinery department of Foley Bros. Dry Goods Company in Houston, under the name of the latter, as section 18 of the contract so provided. The floor space obtained by appellant under the original contract was on the second and third floors of a building adjoining the Main street building occupied by. appellee, but subsequently, under the terms of section 25 of the contract, the space so originally allotted to appellant was changed to the third floor of the Main street building. This change occurred June 30, 1915. On this third floor were the general offices and a corset department of Foley Bros. Dry Goods Company. The area of the entire third floor was approximately 46 feet by 100 feet.

As before shown, the contract was for a term of five years from January 1, 1914.

Paragraph 2 of the contract provided that, "in addition to the premises hereby leased," the defendant should have the right to use of at least 10 feet window space on Main street for the display of its goods, and should also have the privilege, at the discretion of the lessor, to use the models and figures in appellee's show windows for displaying its millinery.

Defendant installed its organization and merchandise in the store of the plaintiff on or before January 1, 1914, and duly paid the consideration of the contract to the plaintiff up to and including September 30, 1917. In September, 1917, the interests of Foley Bros. in this business of plaintiff were sold to Robert I. Cohen. This transfer took place about September 17, 1917. The plaintiff engaged in an extensive advertising campaign through the newspapers of the city of Houston, Tex., and personal communciation to the customers of Foley Bros. Dry Goods Company, announcing the "change of firm." By letter dated September 14, 1917, plaintiff notified the defendant of this change of firm, and stated that the business would be conducted only temporarily under the name of Foley Bros. Dry Goods Company.

During the month of September, 1917, the store of Foley Bros. Dry Goods Company was closed for one day to the purchasing public without the consent of the defendant. As a result thereof the sales of the defendant were nothing. Plaintiff further conducted a "change of firm sale" during said month, which resulted in the sale of defendant amounting to nothing. Thereupon the defendant, by letter dated September 21, 1917, advised the plaintiff that it considered plaintiff to have breached the contract, and gave notice of its withdrawal to take effect September 29, 1917. On said date the defendant withdrew and surrendered the premises to the plaintiff.

The plaintiff did not agree to or acquiesce in the abandonment of the contract and premises by the defendant. It made no effort to lease the space set aside to defendant to any other person, but did not enter upon or use it for itself. It did, however, use the space in its show windows which defendant had been permitted to use under the contract.

The evidence shows that after defendant abandoned the contract and ceased to use the window space it would have been injurious to plaintiff's business to have left a vacant space of 10 feet in its show windows.

The trial judge in his conclusions of law and fact, filed at the request of defendant, finds that the use of the window space granted defendant by the contract was merely a right or license to be enjoyed by the defendant so long as it occupied the premises leased to it by plaintiff, and that plaintiff was at all times ready and willing for the defendant to use such space.

We shall not set out or discuss in detail the various assignments of error. The first attack upon the judgment is made on the ground that the contract on which plaintiff's cause of action is based was a contract of

partnership, and the parties thereto, being corporations with limited powers, could not lawfully enter into a partnership, and no recovery could be had for the failure of defendant to continue to comply with its partnership agreement.

[1] It is a well-established general rule that a corporation cannot form a partnership with another corporation, nor with an individual. The reason for the rule is that in entering into a partnership the identity of the corporation is lost or merged with that of another, and the direction and management of its affairs is placed in other hands than those provided by the law of its creation. Both the law and public policy forbids enforcement by the courts of such partnership agreements. Sabine Tram Co. v. Bancroft, 16 Tex. Civ. App. 170, 40 S. W. 837; White v. Pecos L. & W. Co., 18 Tex. Civ. App. 634, 45 S. W. 207; Murray Co. v. Bank (Tex. Civ. App.) 61 S. W. 508; Markowitz v. Greenwald Theater Co. (Tex. Civ. App.) 75 S. W. 74.

[2] We cannot, however, agree with appellant's contention that the contract created a partnership relation between the parties. On the contrary, we think the agreement is lacking in the essential elements of a partnership, in that there was no sharing in the profits or losses arising out of the fulfillment of the contract. Paragraph 4 of the contract, which states the consideration to be received by the appellee, cannot be construed as giving it any interest in the profits of the business. The word "profits" is not used, and whatever the parties may have meant by the term "net sales" it cannot mean profits.

The paragraph, when read as a whole, can only be reasonably construed as fixing the compensation appellee was to receive at 15 per cent. of the volume of appellant's business less the incidental expenses of conducting the business of selling its goods, and guaranteeing that this per cent. should be as much as $10,500 per annum. It is, we think, clear from the language of the contract that appellee was to receive this per cent. regardless of whether appellant made a profit out of the business. This is evident from the concluding portion of the paragraph, which provides that, should the business of the lessee for any year exceed the sum of $70,000 (15 per cent. of this amount being the $10,500 guaranteed), the lessee would pay the lessor an additional 15 per cent. on all such business above $70,000. That this is the real meaning of the paragraph of the contract, and that the 15 per cent. to be paid appellee was not to be computed on profits of the lessee, is clearly shown by paragraph 20 of the contract, which reads as follows:

"All the moneys received by the lessee in the sale of its merchandise shall be paid at the time of sale to the cashier of lessor, who shall keep a full, true, and complete record, open and available to lessee, of all such receipts. The lessor agrees to disburse by voucher of lessee only, or lessee's properly appointed executive, all expenses necessary for the conduct of the business of the lessee, and lessor, upon deducting all such disbursements and one-twelfth ($1/12$) part of the said sum of ten thousand five hundred dollars for rent, and the percentage of sales, if any, above the sum of seventy thousand dollars for any one year, and all other expenses, shall pay to the lessee at Houston, Texas, the remaining balance, on or before the 15th day of each month for all sales made during the preceding month. Settlement to be made either in New York or Chicago exchange."

[3] There can be no business partnership unless there is a joint interest in the profits of the business as profits, and not merely as compensation for services. Buzard v. Bank, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7; Fechteler v. Palm Bros., 133 Fed. 462, 66 C. C. A. 336; Smith v. Schultz, 89 Cal. 526, 26 Pac. 1087; McTigue v. Arctic Ice Cream Co., 20 Cal. App. 708, 130 Pac. 165.

[4] We do not think the next contention of appellant that, independent of the question of partnership, the provisions of the contract required the performance of such acts by each of the corporations and such surrender by each of the direction and management of its affairs as to render the contract ultra vires and unenforceable, should be sustained.

The articles of incorporation of appellant and appellee are not contained in the record, and all we know of the charter powers of either is that one is incorporated for the purpose of conducting a dry goods business and the other a millinery business. We can see no reason for holding that the appellee could not do and perform all of the obligations of its contract without violating any of the limitations imposed by law or public policy upon the exercise of corporate power, and we think this is also true as to the obligations of appellant. The evidence shows that appellant has been and is doing business under similar contracts all over the country, 64 or 65 such contracts being in existence at the time of the trial, and its power to execute them, so far as the record shows, has never been challenged.

[5] We think it immaterial whether the contract can be technically termed a simple contract of lease. It was a lawful contract, and appellant can be held liable for its breach. By its terms appellant secured the use and possession of a portion of appellee's store building, and the agreement of appellee to furnish it with facilities and services incidental to the possession and use of the space in the building allotted to it for a term of five years for a designated compensation; and when, as found by the trial court, appellant voluntarily and without just

cause violated its contract to occupy the space for the designated time, its liability to appellee for damages should be measured by the rule applying to the breach of a contract of lease.

[6] There is nothing in the record to justify the contention of appellant that the contract was breached by the appellee. It goes without saying that sale by Foley Bros. of the stock in appellee's corporation to Cohen was not a breach of the contract. There is nothing in the record to justify the conclusion that Foley Bros.' personal popularity or wide acquaintance was one of the considerations for the execution of the contract by appellant.

Appellant was bound to have known when it entered into the contract with appellee corporation that the ownership of the corporation stock might change at any time, and also that the corporate name might be changed, and neither the change in the ownership of the stock nor the advertised intention of Cohen to at some time change the name of the corporation created any breach of the contract by appellee, or justified appellant in refusing to fulfill its obligation.

[7] The services which appellee agreed to perform in carrying out the contract and the facilities it agreed to furnish appellant, including the use of the show window, were only incidental to the contract to furnish the space in the building for the conduct of appellant's business, and we do not think appellant is entitled to any deduction from the amount due under its contract because of any advantage appellee may have gained by not having to furnish said services and facilities.

The evidence shows that appellee's general offices and corset department were on the third floor, and the conduct of its own business required it to furnish light and elevator service for this floor, and there is no evidence indicating that the cost of this service nor the cost of its bookkeeping, cash register, and wrapping service was lessened by appellant's abandonment of its contract.

[8] The trial court finds that the rental value of the 10 feet of window space which appellant was permitted or licensed to use under the contract was $200 per month, but we do not understand this finding to mean that it was worth that to appellee after the abandonment of the rented premises by the appellant. As before stated, the evidence indicates that appellee's use of that space after appellant vacated it was necessary to protect its business from injury it would have sustained by the unattractive appearance its show windows would have presented if an open space of 10 feet had been left therein. Appellee was not required to leave this space vacant to its material injury, and its use of the space in these circumstances created no liability on its part to appellant.

241 S.W.—18

[9] There is no merit in the contention that the contract is unenforceable, because it was shown on the trial that appellee had not obtained the consent of its lessor to sublet the portion of the building let to appellant. The evidence shows that appellant was never disturbed in its possession of the premises, and, no objection was ever made by the landlord of appellant, and we do not think appellant can now defeat appellee's claim by disputing its title to the property. Lamb v. Beaumont Temperance Hall Co., 2 Tex. Civ. App. 289, 21 S. W. 713; Cross v. Freeman, 19 Tex. Civ. App. 428, 47 S. W. 473.

[10] The appellee was under no obligation to lease the premises to another for appellant's protection after it had abandoned the premises. Racke v. Brewing Association, 17 Tex. Cix. App. 167, 42 S. W. 774; 24 Cyc. 1164.

This disposes of all the questions presented by the brief of appellant. We have considered all of the assignments presented, and in our opinion none of them should be sustained.

The judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

[11] While the contract upon which this suit is based partakes more of the nature of a lease than a partnership, it is lacking in some of the essential elements necessary to constitute a leasehold estate in appellants to any portion of the space occupied by it in appellee's building. In so far as the 10 feet of window space is concerned, there was no designated part of the show window set apart to appellant. The 10 feet of space that it was permitted to use was not even required under the terms of the lease to be continuously in one part of the window, and the allotment of the space might have been changed from time to time to conform to the convenience of the parties or the interest of their respective businesses.

Such being the character of the right acquired by the appellant, we think the trial court was correct in holding that it was a mere license to use the space so long as appellant continued to occupy and use the other designated portions of the building allotted to it under the terms of the contract.

In so far as the other portions of the building allotted to appellant is concerned, it cannot be said that the contract gave a leasehold estate therein in a technical sense. Appellant had no absolute dominion thereover, and could only use it under appellee's direction. It had no access to the building except at such times as appellee should open it for the purpose of carrying on its business. Section 17 of the contract provides:

"The time for opening and closing the business carried on as herein contemplated shall be controlled by the rules and regulations of

the said lessor, and the giving out and control of the keys shall be governed exclusively by the said lessor."

Under this view of the contract it necessarily follows that appellant is not entitled to any compensation from the appellee for the value of the window space used by appellee after appellant breached its contract.

It also follows that the rule against subletting rented premises without the consent of the owner has no application.

With these additional reasons for overruling appellant's assignment raising the question indicated, we adhere to the conclusion expressed in our main opinion, and appellant's motion for rehearing is overruled.

Overruled.