OWEN FARGUSSON *vs.* R. K. WINSLOW.

December 19, 1885.

**Personal Property—Detention on Unfounded Claim of Lien.**—One having possession of personal property of another has no right to detain the same upon claim of a lien thereon, although asserted in good faith, if in fact there exists no right of lien.

**Same—Action for Money paid to obtain Property unjustly Detained.** Where one, in order to recover possession of his personal property from another, who unjustly detains it, is compelled to pay money demanded as a condition of delivery, such payment, made under protest, is not voluntary, and may be recovered back; at least when the detention would subject the owner to hardship or serious inconvenience. Rule applied in case of a cargo of a vessel detained upon an unfounded claim for demurrage.

**Same—Evidence.**—In an action to recover money so paid, evidence is admissible of facts which made it necessary that the plaintiff should speedily recover possession of the property.

Appeal by defendant from an order of the district court for St. Louis county, *Stearns*, J., presiding, refusing a new trial. The charge of the court referred to in the opinion was as follows: "If this delay in loading was occasioned simply by the vessel waiting her turn to load at the elevator, and she had her turn with other vessels according to their arriving and reporting, then the plaintiff is entitled to a verdict of $200, with interest from the 29th day of October, 1884. If you are satisfied that the only delay was occasioned by the vessel waiting her turn at the elevator, and that she had her turn in the regular order with other vessels, then you will give a verdict for the plaintiff for the amount claimed."

*Ensign & Cash*, for appellant.

*White & Reynolds*, for respondent.

DICKINSON, J. The plaintiff chartered the steam-barge Egyptian, owned by the defendant, to transport a cargo of wheat from Duluth to Buffalo. There was no special agreement as to the time of delivering or receiving the cargo. The plaintiff was advised, on the 29th of September, that the vessel was ready to take in cargo, but, by reason, as the jury has determined, of other vessels then waiting at the elevators to be loaded, she did not receive her cargo until the vessels so preceding her had been loaded, which was not until the fifth of October. The plaintiff had grain in the elevators for delivery, and ordered it to be delivered. He had not, however, any control over the management of the elevators. This action relates to a claim of the defendant for demurrage on account of such detention. After the vessel arrived at Buffalo, the cargo, consisting of more than 50,000 bushels of wheat, was detained, and a delivery refused until the plaintiff should pay a claimed demurrage of $200. To release the grain from such detention the plaintiff paid that sum under protest, and now prosecutes this action to recover back the money so paid.

It is not claimed here that the defendant was in fact entitled to the demurrage; and upon the exceptions taken to the charge of the court as given, and to the refusals to charge as requested, only the follow-

ing questions are presented for decision: (1) Did the claim for demurrage, to which the claimant was not in fact entitled, although asserted in good faith, constitute a lien upon the cargo, and give a legal right to detain the same until such claim should be adjusted or determined? (2) Is the payment of such claim, under protest, with knowledge of all the facts, and for the purpose of releasing the cargo from such detention, to be deemed a merely voluntary payment, or as one made under such circumstances of compulsion or duress that it may be recovered back? (3) Was the court justified in taking from the jury the question as to whether the payment in question was made under duress, or was voluntary?

1. The first of these questions we answer in the negative. The law gives the lien as a security only where there is a legal right which may be enforced. If there is no such right, the lien, which is only an incident, cannot exist. The existence of a lien depends upon the fact that the defendant was entitled to demurrage, and not upon what he may have supposed to be his right.

2. When one, in order to recover possession of his personal property from another who unjustly detains it, is compelled to pay money which is demanded as a condition of delivery, such payment, when made under protest, is deemed to have been made compulsorily or under duress, and may be recovered back,—at least when such detention is attended with circumstances of hardship or of serious inconvenience to the owner. *Shaw* v. *Woodcock*, 7 Barn. & C. 73; *Parker* v. *Bristol & E. Ry. Co.*, 7 Eng. Law & Eq. 528; *Elliott* v. *Swartwout*, 10 Pet. 137; *Cobb* v. *Charter*, 32 Conn. 358; *Chase* v. *Dwinal*, 7 Me. 134; *Chamberlain* v. *Reed*, 13 Me. 357; *Scholey* v. *Mumford*, 60 N. Y. 498; *Briggs* v. *Boyd*, 56 N. Y. 289; *Beckwith* v. *Frisbie*, 32 Vt. 559; *Lafayette & I. R. Co.* v. *Pattison*, 41 Ind. 312; *Hackley* v. *Headley*, 45 Mich. 569. The detention of this cargo of grain, amounting to over 50,000 bushels, upon the unauthorized claim for demurrage, constituted such duress of property that the payment of the demand must be deemed to have been made under moral compulsion, and not voluntarily, and the plaintiff was entitled to recover. The amount and the presumable value of the property, as compared with the sum demanded, and the fact shown that the wheat had been sold or con-

tracted for delivery beyond Buffalo, are enough to lead to the above conclusion.

3. There was no real conflict in the evidence concerning the facts affecting the question as to whether the payment was made under duress of property, or voluntarily; nor were the facts such as to warrant any other conclusion than that which was involved in the charge to the jury, and which we have already referred to. The court did not err in taking this question from the jury.

4. The only remaining point relates to the admissibility of evidence on the part of the plaintiff, showing that the cargo had been contracted or sold "to go beyond Buffalo." This was admissible for the purpose of showing the importance to the plaintiff that he suffer no delay in securing the possession of the grain. What showed a necessity for possession on his part went to show his payment to be not voluntary, but compulsory.

Order affirmed.