STATE OF MINNESOTA, *ex rel.* Anne M. McCardy, *vs.* ANDREW N. Nelson, County Treasurer.

June 7, 1889.

Taxes—Payment under Protest.—The payment, under protest, of an unlawful demand, when such payment is necessary to avoid serious injury or risk in respect to property, is not to be deemed as voluntarily made, and the money may be recovered back.

Same—Recovery of Illegal Taxes Paid to Secure Recording of Deed. One who by force of the statute is unable to place on record a deed of conveyance by which he has acquired title to real estate, by reason of illegal taxes being charged upon the land, may pay such taxes, in order to secure the recording of his deed, without such payment being deemed voluntary.

Same — Mandamus to County Treasurer.—*Mandamus* will not lie to compel a county treasurer to certify that all taxes are paid when taxes remain unpaid, although the same are illegal. *Smith* v. *Schroeder*, 15 Minn. 18, (35) commented upon.

Appeal by defendant from an order of the district court for Ramsey county, *Kelly, J.,* presiding, overruling a demurrer.

*James J. Egan* and *Hermon W. Phillips,* for appellant.

*Kueffner & Fauntleroy,* for relator (respondent.)

DICKINSON, J. This is an appeal from an order overruling a demurrer to an alternative writ of *mandamus.* It appears by the writ that, a deed of conveyance of a certain lot of land in the city of St. Paul having been made to this relator by the owners of the property, she desired to have the deed recorded in the office of the register of deeds. Under the statute referred to in the writ, it is the duty of the register of deeds to refuse to receive such instruments for record until the county auditor shall have certified that the taxes upon the land have been paid, and the auditor is not authorized to so certify until all taxes assessed against the property, and due and payable, shall have been paid to the county treasurer, and his receipt therefor produced. It also appears that on the 11th day of February, 1889, the relator tendered to the respondent the sum of $125.50 in pay-

ment of taxes upon the property, and demanded a receipt therefor; this being, as is alleged, the only legal taxes assessed upon this prop- erty. The tender and the receipt asked for were refused, for the rea- son that the further sum of $6.25 was not included in the tender, that sum being charged as a tax upon the property for the cleaning of snow and ice from the sidewalk in front of the lot, under a special act of the legislature passed in 1887. (Sp. Laws 1887, c. 48, §§ 8–11.) It is claimed that this tax is upon its face illegal, for reasons which we need not now state. The refusal of the auditor also to make the cer- tificate necessary to entitle the deed to record is recited in the writ. The command of the writ is, in substance, that the respondent accept the tender of $125.50, and thereupon that he issue his receipt stat- ing that all taxes against this land are paid.

This proceeding by the extraordinary writ of *mandamus* should not be resorted to as a remedy under the circumstances here presented, unless, the ordinary legal remedies being unavailable or inadequate, it is necessary for the protection of the substantial rights of the re- lator. Not only has the statute prescribed a specific mode in ac- cordance with which defences may be made to tax proceedings, and the validity of a tax be judicially and finally determined, but a de- termination in this proceeding against the county treasurer alone, the county not being a party, would be of no effect as an adjudica- tion concerning the validity of the tax in question; and if the relator proposes to resist the payment, the same questions here involved must be tried again upon her answer being interposed in the tax pro- ceedings, as prescribed by statute. We need not advert to other con- siderations upon this point. It is only claimed that *mandamus* is a proper remedy because there is no other. We are of the opinion that the remedy here invoked was unnecessary for the protection of the relator; that she might have paid the alleged illegal tax of $6.25 under protest, for the purpose of enabling her to get her deed re- corded; and that if in fact the tax was illegal, she might have recov- ered it back in an action for that purpose. If so, this writ should not have been allowed.

The conclusion thus indicated rests upon the ground that the pay- ment, under the circumstances stated, would have been virtually a

compulsory one, and not voluntary. It may be stated as a geneial proposition that a payment, under compulsion, of money unlawfully demanded, does not conclude the party paying; he by proper protest indicating that he pays by compulsion, and not voluntarily. He may recover it again. The difficulty lies in determining whether in any particular case the payment is to be deemed as compulsory or voluntary. An examination of the authorities, and a consideration of the principle upon which they obviously rest, leaves no doubt in our minds concerning the question here presented. It has always been considered that the payment, under protest, of an illegal tax or demand, to an officer armed with a warrant authorizing him to enforce the payment by imprisonment or by seizure and sale of property, and who is about to so exercise his authority, is not voluntary, and may be recovered back. *County of Dakota* v. *Parker*, 7 Minn. 207, (267;) *Preston* v. *City of Boston*, 12 Pick. 7; *Seeley* v. *Town of West-port*, 47 Conn. 294; *Allen* v. *City of Burlington*, 45 Vt. 202; *Nicko-demus* v. *East Saginaw*, 25 Mich. 456; *Ruggles* v. *City of Fond du Lac*, 53 Wis. 436, (10 N. W. Rep. 565;) *Smith* v. *Farrelly*, 52 Cal. 77; *Guy* v. *Washburn*, 23 Cal. 111; *Grim* v. *Weissenberg School-Dist.*, 57 Pa. St. 433. Nor is this proposition applicable merely with respect to personal property. The same is true, as it obviously ought to be, when real property is involved. See cases above cited, particularly *Seeley* v. *Town of Westport, supra; Guy* v. *Washburn, supra;* also *Ste-phan* v. *Daniels*, 27 Ohio St. 527; *Valentine* v. *City of St. Paul*, 34 Minn. 446, (26 N. W. Rep. 457.) Nor is it necessary, in order to constitute compulsory as distinguished from a voluntary payment, that the unlawful demand be made by an *officer* who is prepared to enforce it by process. There may be that kind and degree of necessity or coercion which justifies and virtually requires payment to be made of the illegal demands of a private person who has it in his power to seriously prejudice the property rights of another, and to impose upon the latter the risk of suffering great loss, if the demand be not complied with· This is illustrated in the case of *Fargusson* v. *Winslow*, 34 Minn. 384, (25 N. W. Rep. 942,) and cases cited. In *Westlake* v. *City of St. Louis*, 77 Mo. 47, the payment of an illegal water license or charge, under threat that if not paid the plaintiff's supply of water would be shut

off, which would result in a suspension of operations in his foundry, was deemed a kind of "moral duress," making payment practically compulsory. In *Wakefield* v. *Newbon*, 6 Q. B. 276, the payment of an illegal demand, in order to recover title-deeds in the hands of the defendant, was considered not to be a voluntary payment. In *Close* v. *Phipps*, 7 Man. & G. 586, the same was held as to an excessive claim of a mortgagee who was proceeding to sell under a power of sale. See, also, *Fraser* v. *Pendlebury*, 31 L. J. C. P. 1. In *City of Marshall* v. *Snediker*, 25 Tex. 460, (78 Am. Dec. 534,) an ordinance subjecting one to the risk of a penalty of $25 a day for selling liquor without a license was deemed to give to the payment of an illegal license fee the character of a compulsory payment. See, also, *Catoir* v. *Watterson*, 38 Ohio St. 319, and *Morgan* v. *Palmer*, 2 Barn. & C. 729, 734, 735.

Through these and numerous other cases may be traced the principle that one may pay an unlawful demand when that is really necessary to avoid serious personal harm, or serious prejudice or loss in respect to property, without being chargeable with having voluntarily relinquished his right to contest the legality of the demand. Obviously the question of necessity must be considered and determined under the circumstances affecting each particular case. The reasons of necessity upon which the law in this particular must be deemed to be founded are applicable in full force in this case, and would have justified the payment of the tax in question, and a subsequent recovery of it, if illegal. The officer, of course, could not certify that the taxes were paid while this tax stood undischarged, and its validity undetermined. The register of deeds was prohibited by law from recording the deed until the fact of payment should be thus certified to him. The relator could not secure the recording of the deed by which she had acquired title to this land. If not recorded, she was liable, by force of our registry law, to be wholly divested of her title, either through a subsequent conveyance from her grantor to any innocent purchaser who might pay the tax and place his deed on record, or through the recovery and docketing of judgments against her grantor. Such a possible result the relator was wholly powerless to prevent, except by the payment of the tax. The opportunity for her to inter-

pose a defence to the tax in the tax proceedings, and to secure an adjudication as to its validity, would not occur for a considerable time after the conveyance to the relator, and almost always in such cases some interval must elapse between the time of the grant and the time when an adjudication could be secured upon that subject; and in the mean time the security of the title acquired must depend upon circumstances beyond the control of the grantee. The inducements which the law thus imposes upon a grantee of lands to pay a tax of inconsiderable amount, rather than to suffer his title to valuable lands to be thus jeopardized, may well be deemed to amount to compulsion. The coercion is certainly as real, and of substantially the same nature, as in the case of a distress of goods. Indeed, men of ordinary prudence would not generally hesitate to pay at once such a demand as is involved in this tax, rather than to incur the risk of losing their entire estates by not placing their deeds on record. Both upon the ground of reason and of authority such a payment, made under protest, should not be regarded as voluntarily made. The parties interested do not stand upon equal terms. The law, in effect, compels the payment.

It is probable that the allowance of this writ by the district court was based upon what may have been inferred from the decision in *Smith* v. *Schroeder*, 15 Minn. 18, (35.) There is language used in that opinion, which, if understood to be of general application, is opposed to what we now decide, as well as to other and later decisions of this court, to which we have referred. But it is unnecessary now to question the correctness of that decision. That action was against the county treasurer who had received the money paid as taxes. The defendant was deemed to have been wholly blameless in receiving the money paid, the fault which afforded the occasion for the payment being that of other officers. The money, when received by him, he should have placed in the treasury with other public funds, as he presumably did do. Even though, under the circumstances of that case, the action could not be sustained against the treasurer, it does not follow that the plaintiff might not have recovered in an action against the county.

Our conclusion is that the order overruling the demurrer should be reversed, and the writ quashed. Costs will not be allowed to the prevailing party in this case.

Ordered accordingly.