## GEORGE JOANNIN et al. vs. DAVID OGILVIE et al.

Argued May 4, 1892.　Decided May 20, 1892.

**Involuntary Payment—Duress in Respect to Real Property.**—There may be duress with respect to real property as well as personal, so as to render a payment on account of it involuntary, so that the money may be recovered back.

**Duress by Filing Unfounded Lien Claim.**—So *held* where a party filed a mechanic's lien against property upon an unfounded claim which the owner paid under protest, in order to clear the title of record, so that he might consummate a loan upon the property which he had negotiated in order to raise money to pay a prior overdue mortgage and other pressing debts; he having no other available means of raising the money.

Appeal by plaintiffs, George Joannin and Christian O. Hansen, from a judgment of the District Court of St. Louis county, *Stearns,* J., entered February 10, 1891.

This action was brought upon a note for $497, and interest, dated May 1, 1891, payable to plaintiff's order fifteen days thereafter. It was made by defendant David Ogilvie, and indorsed for his accommodation by F. H. Barnard, the other defendant. The note was given for the debt of Ogilvie, and he delivered to plaintiffs, as security for its payment, thirty shares of the capital stock of the Northwestern Investment Company, worth $300, and two shares of the capital stock of the St. Louis Investment Company, worth $200.

By his answer, Ogilvie admitted his liability on the note, and stated that Barnard was his surety, and for counterclaim alleged that on January 31, 1890, he owned lots Nos. 93 and 95 in Block 47 in Duluth proper, and had erected buildings thereon; that he bought doors, sash, and other goods of one A. H. Thompson, a retail dealer, and paid him for them, and used them in the buildings. Thompson had previously purchased these goods with others from plaintiffs, the manufacturers, to sell again at retail to his customers. Thompson was indebted to plaintiffs on account for goods so bought of them, but Ogilvie did not know this.

On that day plaintiffs made and filed for record a lien statement, claiming to be due them from Thompson $682.50, and that he was a contractor with Ogilvie to furnish material for the buildings on the lots. This claim was incorrect and the lien invalid. Ogilvie was largely indebted, and pressed for money, and was negotiating for a loan of $15,000, to be secured by his mortgage on this real estate. The lenders refused to make the loan unless this lien was removed. Plaintiffs refused to discharge it of record unless Ogilvie paid Thompson's debt to them. He paid it under protest March 19, 1890, and in this action asked judgment against plaintiffs for the amount so paid, (after deducting the amount due them on the note) and for return of his stocks.

The action was tried September 24, 1890, without a jury. The court found the payment by Ogilvie to plaintiffs was made under duress, and directed judgment as prayed in his answer. It was so entered, and plaintiffs brought this appeal. The points made and authorities cited by counsel on the argument in this court are embraced in the opinion.

*H. F. Greene* and *John H. Brigham,* for appellants.

*J. B. Richards,* for respondents.

MITCHELL, J. The findings in this case are so specific as to constitute a sufficient statement of the facts, and an examination of the record satisfies us that, on all material points, they are fully justified by the evidence.

That plaintiff's claim of a lien on the land of the defendant Ogilvie was wholly unfounded is conceded. *Merriman* v. *Jones,* 43 Minn. 29, (44 N. W. Rep. 526.) Therefore the only question is whether the payment of the claim was voluntary, or whether it was made under such compulsion or constraint that it is to be deemed in law involuntary, so that the money may be recovered back.

In examining the authorities upon the question as to what pressure or constraint amounts to duress justifying the avoiding of contracts made, or the recovery back of money paid, under its influence, one is forcibly impressed with the extreme narrowness of the old common-law rule on the one hand and with the great liberality of the equity

rule on the other. At common law, "duress" meant only duress of the person, and nothing short of such duress, amounting to a reasonable apprehension of imminent danger to life, limb, or liberty, was sufficient to avoid a contract, or to enable a party to recover back money paid. But courts of equity would unhesitatingly set aside contracts whenever there was imposition or oppression, or whenever the extreme necessity of the party was such as to overcome his free agency. The courts of law, however, gradually extended the doctrine so as to recognize duress of property as a sort of moral duress, which might, equally with duress of the person, constitute a defense to a contract induced thereby, or entitle a party to recover back money paid under its influence. And the modern authorities generally hold that such pressure or constraint as compels a man to go against his will, and virtually takes away his free agency, and destroys the power of refusing to comply with the unlawful demand of another, will constitute duress, irrespective of the manifestation or apprehension of physical force.

The rule is that money paid voluntarily, with full knowledge of the facts, cannot be recovered back. If a man chooses to give away his money, or to take his chances whether he is giving it away or not, he cannot afterwards change his mind; but it is open to him to show that he supposed the facts to be otherwise, or that he really had no choice. Pol. Cont. 556.

In *Fargusson* v. *Winslow*, 34 Minn. 384, (25 N. W. Rep. 942,) this court held that "when one in order to recover possession of his personal property from another, who unjustly detains it, is compelled to pay money which is demanded as a condition of delivery, such payment, when made under protest, is deemed to have been made compulsorily or under duress, and may be recovered back, at least when such detention is attended with circumstances of hardship or serious inconvenience to the owner." Again, in *De Graff* v. *Ramsey Co.*, 46 Minn. 319, (48 N. W. Rep. 1135,) it was said: "There is a class of cases where, although there be a legal remedy, a person's situation, or the situation of his property, is such that the legal remedy would not be adequate to protect him from irreparable prejudice; where the circumstances and the necessity to protect himself or his

property otherwise than by resort to the legal remedy may operate as a stress or coercion upon him to comply with the illegal demand. In such cases, his act will be deemed to have been done under duress, and not of his free will." *Fargusson* v. *Winslow, supra; State* v. *Nelson,* 41 Minn. 25, (42 N. W. Rep. 548;) and *Mearkle* v. *County of Hennepin,* 44 Minn. 546, (47 N. W. Rep. 165,)—are instances where the danger of irreparable or serious prejudice was considered so great and the legal remedy so inadequate as to practically leave the party no choice but to comply with the illegal demand, and hence to render the payment involuntary. It may be stated generally that whenever the demandant is in position to seize or detain the property of him against whom the claim is made without a resort to judicial proceedings, in which the party may plead, offer proof, and contest the validity of the claim, payment under protest, to recover or retain the property, will be considered as made under compulsion, and the money can be recovered back, at least where a failure to get or retain immediate possession and control of the property would be attended with serious loss or great inconvenience. *Oceanic Steam Nav. Co.* v. *Tappan,* 16 Blatchf. 297.

As was said as long ago as *Astley* v. *Reynolds,* 2 Strange, 915, "plaintiff might have such an immediate want of his goods that an action of trover would not do his business. Where the rule *volenti non fit injuria* is applied, it must be when the party has his freedom of exercising his will, which this man had not. We must take it he paid the money relying on his legal remedy to get it back again."

It has been said that, to constitute a payment under duress, "there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no other means of immediate relief than by advancing the money." *Brumagim* v. *Tillinghast,* 18 Cal. 265; *Radich* v. *Hutchins,* 95 U. S. 210.

Beyond these and similar statements of general principles, the courts have not attempted to lay down any definite and exact rule of universal application by which to determine whether a payment is voluntary or involuntary. From the very nature of the subject, this

cannot be done, as each case must depend somewhat upon its own peculiar facts. The real and ultimate fact to be determined in every case is whether or not the party really had a choice,—whether "he had his freedom of exercising his will."⎦ The courts, however, by a gradual process of judicial exclusion and inclusion, have arranged certain classes of cases on one or the other side of the line. For example, payment of an illegal tax, in order to prevent issuing a warrant of distress in the nature of an execution, and upon which the party has no day in court or opportunity to defend, is held not voluntary. Such were the cases of *Board of County Com'rs of Dakota Co.* v. *Parker,* 7 Minn. 267, (Gil. 207,) and *Preston* v. *Boston,* 12 Pick. 7. So, also, the payment of an illegal demand in order to obtain possession of personal property detained otherwise than by judicial process, and where the immediate want of the property was so urgent that an action of replevin "would not do the owner's business." Such was the case of *Fargusson* v. *Winslow, supra.* Also the payment of an illegal tax in order to get a deed on record, as in the case of *State* v. *Nelson, supra;* or the payment of illegal fees in order to secure the exercise of its jurisdiction by the probate court in the administration and settlement of an estate, where the delay was liable to result in serious loss, as in the case of *Mearkle* v. *County of Hennepin, supra.*

On the other hand, it is well settled that the mere refusal of a party to pay a debt or to perform a contract is not duress, so as to avoid a contract procured by means of such refusal, although the other party was influenced in entering into it by his financial necessities. Such was the case of *Cable* v. *Foley,* 45 Minn. 421, (47 N. W. Rep. 1135;) also *Miller* v. *Miller,* 68 Pa. St. 486; *Hackley* v. *Headley,* 45 Mich. 569, (8 N. W. Rep. 511;) *Goebel* v. *Linn,* 47 Mich. 489, (11 N. W. Rep. 284;) and *Silliman* v. *United States,* 101 U. S. 465,—cited by plaintiff. It will be noted that in the last case referred to the party entered into the new contract, not for the purpose of obtaining possession of his property, (the barges,) but to secure payment of money due him from the government.

So, also, the fact that a lawsuit is threatened or property has been seized on legal process in judicial proceedings to enforce an illegal

demand will not render its payment compulsory, at least in the absence of fraud on part of the demandant in resorting to legal process for the purpose of extorting payment of a claim which he knows to be unjust. The ground upon which this doctrine rests is that the party has an opportunity to plead and test the legality of the claim in the very proceedings in which his property is seized. Under this class fall the following cases cited by plaintiffs: *Forbes* v. *Appleton*, 5 Cush. 115; *Benson* v. *Monroe*, 7 Cush. 125; *Taylor* v. *Board of Health*, 31 Pa. St. 73; *Oceanic Steam Nav. Co.* v. *Tappan, supra.*

Also the payment of an illegal license to follow a particular business, where the party could not have been subjected to any penalties without judicial proceedings to enforce them, in which he would have an opportunity to contest the legality of the license, or where the license was exacted for a business the pursuit of which was not a natural right, but a mere privilege, which might be granted or withheld, at the option of the state. To this class belong the following cases cited by plaintiffs: *Cook* v. *Boston*, 9 Allen, 393; *Emery* v. *Lowell*, 127 Mass. 138; *Mays* v. *Cincinnati*, 1 Ohio St. 268; *Custin* v. *City of Viroqua*, 67 Wis. 314, (30 N. W. Rep. 515.)

The same has been held as to money paid under threats of distress for rent, in the absence of fraud or any other fact, except that no rent was due. The theory seems to be that the party's remedy is to replevin, and try the question of liability at law. Such was the case of *Colwell* v. *Peden*, 3 Watts, 327, also cited by plaintiffs.

But all these cases in which the payment was held voluntary are clearly distinguishable from the case at bar. The distinguishing and ruling fact in this case was the active interference of plaintiffs with defendant's property by filing the claim for a lien, which effectually prevented the defendant from using it for the purposes for which he had immediate and imperative need.

It was this active interference with the property, and not the necessitous financial condition of the defendant, which constituted the controlling fact. The latter was only one, and by no means the most important, of the circumstances in the case. Counsel for plaintiffs seems to assume that the filing of the claim for a lien was the commencement of a judicial proceeding for its enforcement, and

therefore, within the doctrine of cases cited by him, that the subsequent payment of the claim was voluntary, because defendant might have interposed his defense in these proceedings. But this is clearly wrong. Filing a lien is in no sense the commencement of judicial proceedings. The only remedies open to defendant were either to commence a suit himself to determine the validity of plaintiffs' claim, or wait, perhaps a year, until the latter should commence a suit to enforce it. But with a large indebtedness hanging over him, an overdue mortgage on this very property upon which foreclosure was threatened, with no means to pay except money which he had arranged to borrow on a new mortgage which he had executed on this same property, $13,000 of which was withheld and could not be obtained until plaintiffs' claim of lien had been discharged of record, it is very evident that neither of the remedies suggested "would do defendant's business." He was so situated that he could neither go backward nor forward. He had practically no choice but to submit to plaintiffs' demand. Had it been goods and chattels which plaintiffs had withheld under like circumstances, there would be no doubt, under the doctrine of *Fargusson* v. *Winslow, supra,* but that the payment would be held to have been made under duress. But while filing the lien did not interfere with defendant's possession of the land, yet it as effectually deprived him of the use of it for the purposes for which he needed it as would withholding the possession of chattel property.

It has been sometimes said that there can be no such thing as duress with respect to real property, so as to render a payment of money on account of it involuntary. But this is not sustained by either principle or authority. In view of the immovable character of real property, duress with respect to it is not likely to occur as often as with respect to goods and chattels. But the question in all cases is, was the payment voluntary? and for the purpose of determining that question there is no difference whether the duress be of goods and chattels, or of real property, or of the person. *Fraser* v. *Pendlebury,* 31 Law J. C. P. 1; *Pemberton* v. *Williams,* 87 Ill. 15; *Close* v. *Phipps,* 7 Man. & G. 586; *White* v. *Heylman,* 34 Pa. St. 142; *State* v. *Nelson, supra.*

Considerable stress is placed upon defendant's silence and apparent acquiescence for a considerable time after he paid plaintiff's claim. This might have some bearing upon the question whether the payment was voluntary or involuntary; but if it was in fact the latter, and a cause of action to recover back the money accrued to defendant, it would be neither waived nor barred by his subsequent silence or delay in asserting his right of action.

Judgment affirmed.