### BROWN COUNTY BANK v. EMIL G. HAGE.[1]

October 12, 1923.

No. 23,536.

Verdict for defendant sustained.

1. In a suit on promissory notes, the evidence examined and *held* to support a verdict for defendant on his two defenses of failure of consideration and duress.

What constitutes "duress."

2. Such pressure or constraint put upon one negotiating a contract as compels him to go against his will and virtually takes away his free agency and destroys the power of refusing to comply with the unlawful demand of another will constitute "duress," irrespective of the manifestation or apprehension of physical force, following Joannin v. Ogilvie, 49 Minn. 564.

[1]Reported in 195 N. W. 275.

When condition of victim of duress is for inquiry.

3. The physical and mental condition, at the time being, of the person against whom such pressure or restraint is used is a proper subject of inquiry in every case where there is evidence of duress, and in the case of one whose powers of resistance are weakened by illness or otherwise, that circumstance is properly taken into consideration in determining whether or not the threats overcame his power of resistance and compel him to go against his own will.

No contract when genuine consent of one party is absent.

4. In cases of duress it is the genuineness of the contractual consent that is questioned, and. if the pressure or constraint goes to the extent of making the consent to the contract of the victim forced and spurious, there is no contract because there is no genuine consent of one of the parties thereto.

Action in the district court for Brown county to recover $6,800 upon two notes. The case was tried before Johnson, J., sitting in place of Olsen, J., who at the close of the testimony denied motions by both parties for directed verdict, and a jury which returned a verdict in favor of defendant. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Somsen, Dempsey & Flor*, for appellant.

*Mueller & Streissguth* and *Albert Hauser*, for respondent.

STONE, J.

Action by the payee against the maker of two promissory notes for $3,400 each, both executed and delivered August 19, 1916. There was a verdict for defendant, and from an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appeals.

There are two defenses: One, that there was no consideration for the notes, or that the consideration, such as it was, failed absolutely; and the other, that the execution and delivery of the notes was procured through duress.

It will be convenient to refer to the parties as plaintiff and defendant. Plaintiff is a banking corporation, and from September 1,

1909, to February 1, 1916, defendant was its cashier. He resigned, it may be assumed from the record, because of his personal financial difficulties and ill health, the latter amounting to a temporary physical and nervous collapse, which, if the testimony of the defendant is to be believed, was at or near its worst at the date of the execution of the notes in question.

In 1910 defendant, as plaintiff's cashier, discounted for one of plaintiff's directors a note of one Dickson for $1,500. An additional line of credit was extended to Dickson, and it has turned out that the loan is almost a total loss. There has been some realization from collaterals, but, aside from the proceeds of such securities, the indebtedness remains unpaid. On August 19, 1916, the principal of this indebtedness was $6,800. There was an additional item of accrued interest of $714, represented by a separate note. It was claimed by the officers and directors of the bank that the Dickson loan was the unauthorized act of defendant; that they had repeatedly instructed him not to renew, but to collect it; that he had violated such instructions; that the loan was somewhat of a personal matter with Hage, he having received a similar accommodation from the bank in which Dickson was interested and through the latter's assistance; that defendant had repeatedly promised to protect the plaintiff against loss on the Dickson paper, and that finally, after negotiations, long drawn out, the whole matter was settled by the execution and delivery of the notes sued upon, the aggregate of which, it. will be observed, equals the principal of the Dickson indebtedness. It seems to be conceded that the collateral pledged by Dickson was to be retained by plaintiff for the purpose of realizing therefrom, if it could, something to apply on accrued interest. The collateral has been disposed of, and something has been received.

The foregoing indicates briefly, but sufficiently for present purposes, the attitude of plaintiff. Defendant insisted and supported his position by evidence, that the Dickson loan was authorized; that he had not violated the instructions of the original loans or in the renewals; that he had never promised to make good the resulting loss, except as such a promise was evidenced by his two notes. He claims further that his notes were given in consideration of a prom-

ise by plaintiff immediately to transfer and assign to him the Dickson notes, the plaintiff to retain the collateral, as already indicated, and the first defense to be considered is the claim that, because of the failure of plaintiff to deliver and assign to defendant the Dickson notes pursuant to such promise, there has been a failure of consideration which discharges the defendant from his part of the contract as evidenced by the notes. This defense is pleaded as a want of consideration. It may be that it could have been better pleaded as a failure of consideration; or, better still, as a breach by plaintiff of an essential term or condition of the contract, resulting in defendant's discharge from performance. But such distinctions, in view of the litigation on the merits of the issue, are immaterial. This question was carefully submitted to a jury upon evidence which would have supported a verdict either way. Therefore, the verdict for defendant must stand. It has been confirmed by the trial court. In such a situation we are not at liberty to disturb the result, even though if we had been triers of the fact we would have arrived at a different conclusion. The case has been tried three times, a circumstance to be considered in determining whether there was an abuse of discretion in denying a new trial.

In arriving at this conclusion as to the first defense, we have not overlooked the inconsistencies in the testimony of defendant. They are such that his story seems rather attentuated; but the issue has been carefully tried to a jury, and the verdict confirmed by the trial court. Misgivings as to the propriety of the result are immaterial, so long as we cannot reach the conclusion that the learned trial judge, in refusing a new trial, did not exercise that sound discretion required of him. To reverse would require such a conclusion on our part, and we have been unable to reach it.

We come now to the question of duress. Here, as with respect to the first defense, the evidence is in hopeless conflict, a conflict which, under our system of jurisprudence, is necessarily solved by the jury.

Defendant testified that in connection with the Dickson notes he was told by one of the directors of the bank that he was criminally liable. Plaintiff asserted also that defendant was responsible for a shortage in its bills receivable account, and that he had never ac-

counted for certain rents collected by him. In addition, defendant was indebted to plaintiff for $4,800 of borrowed money. In that situation, it is asserted that defendant was repeatedly threatened with prosecution, both civil and criminal. There is abundant evidence of threats of civil prosecution. Standing alone, they would not amount to duress. They are but the background of defendant's case. The evidence of threats of criminal proceedings is scant. Nevertheless, there is evidence of that kind. A circumstance to be considered is that, whatever may have been the meaning intended by plaintiff's representatives, the evidence of defendant puts their statements in a phraseology which might properly have been considered by the jury to have caused defendant to believe that he was being threatened criminally. The negotiations leading up to the making of the notes were long and involved. Most of plaintiff's directors seem to have assisted, and, of course, it was not improper that they should. Plaintiff's attorneys were professionally in charge of the matter, and finally, on August 18 defendant's consent to the execution of the notes was procured. They were signed and delivered the next day, with the agreement, as he claims, that he was to have immediately the Dickson notes. He was not represented in the transaction by counsel.

At this point it is necessary to consider the evidence for defendant concerning his then physical condition. It would justify a jury conclusion that, while he was not entirely or continuously disabled for the rational conduct of business affairs, his mental capacity was very much reduced. He had been ill, and seriously so for a long time. He had done things which can be explained only upon the ground that at the time being he was mentally unbalanced. He had gone through periods of extreme mental depression, if not total lapse. The testimony along this line was such that distinguished physicians testifying for plaintiff admitted that, if it were true, it led to the conclusion that defendant was disqualified, for the time being, for the transaction of ordinary business.

Taking defendant's condition and the pressure put upon him by plaintiff, as the evidence on his behalf indicates that condition and that pressure to have been, a jury could well reach the conclusion

that he was compelled "to go against his will;" that his free agency virtually was taken away, and his "power to refuse to comply" with the demand of another destroyed.

With that conclusion properly derived from the facts by the jury, the law to be applied is that stated by Mr. Justice Mitchell in Joannin v. Ogilvie, 49 Minn. 564, 52 N. W. 217, 16 L. R. A. 376, 32 Am. St. 581.

It is there pointed out that the "narrowness of the old common law rule" has been abandoned in favor of "the great liberality of the equity rule;" that duress of person is no longer necessary to constitute a defense; and that courts of equity "would unhesitatingly set aside contracts whenever there was imposition or oppression, or whenever the extreme necessity of the party was such as to overcome his free agency."

Any discussion of the essentials of duress which makes decisive the means employed goes wide of the mark. What the law knows as "duress" deprives an agreement of contractual obligation because the process has taken from the consent of the victim that genuineness which is necessary in order that there should be a contract. Literally speaking, a meeting of minds is not necessary to a contract, but there must be a proposition or offer made by one party, and made genuinely, and an acceptance made by the other party and made genuinely. There must be the "expressed mutual assent" discussed in Willison, Contracts, § 20. Misunderstanding or mental reservations may prevent a meeting of minds, but they do not prevent the making of a contract if there is a genuine offer, genuinely accepted. Where, through fraud, mistake, undue influence or duress either offer or acceptance is not the genuine contractual consent of a party, the law allows him to avoid the contract. That is the reason for the rule with respect to the void or voidable character of contracts arising from fraud, mutual mistake of fact, undue influence and duress. Therefore, to confine consideration of duress to the means employed ignores the very reason for the rule. It looks entirely to form and not at all to substance. While, of course, there must be pressure or restraint of the kind capable of producing the necessary result, yet, in the end, the presence or absence of that

result is the important thing; and if the process is such as to compel a contracting party to consent against his will because of the destruction of his "free agency" and his "power to refuse to comply" with the demands of another, there is that, given a sufficient cause, which amounts in law to "duress."

What is a "sufficient cause" defies definition. It must be determined by the facts of each case. It is clear that means of persuasion in themselves lawful may be so abused as to constitute duress. And in any case a factor to be considered is the mental capacity and condition at the time being of the alleged victim. A man of experience, of proved business ability and aggressive personality is another person when he is going through, or is convalescing from a nervous break-down which at times has brought him to the verge of irrationality. There is evidence in this case, considerable of it, which indicates that defendant was in that condition when he executed the notes in question. If he was, then the evidence concerning the threats made against him and the pressure exerted upon him is such as to sustain the verdict. Again, it is proper to remark upon the confirmation of the verdict by the learned trial judge, and again we find it impossible to say, in the peculiar circumstances of this case, that in that conclusion a sound discretion was not exercised.

The doctrine of Joannin v. Ogilvie, supra, is now the accepted law. See Snyder v. Samuelson, 140 Minn. 57, 167 N. W. 287; De Graff v. County of Ramsey, 46 Minn. 319, 58 N. W. 1135; Fargusson v. Winslow, 34 Minn. 384, 25 N. W. 942; Welch v. Beeching, 193 Mich. 338, 159 N. W. 486, 13 C. J. 402.

Especially convincing is the reasoning of the supreme court of Maryland in Central Bank v. Copeland, 18 Md. 305, 81 Am. Dec. 597. Similar citations could be multiplied, but to no avail, but, in passing, Snyder v. Samuelson, supra, must be overlooked. There the proof of duress seems to have been less substantial than it is here.

It is claimed that there was error in excluding much offered testimony concerning the transactions between defendant and Dickson and also those between plaintiff and defendant which preceded the making of the notes in suit. Such testimony was immaterial, because it is clear that plaintiff in good faith was asserting a claim

against defendant, which he in turn and in good faith denied. In that situation his notes were executed and delivered as a compromise and settlement. It was necessary only to show that a claim was so asserted and so compromised in order to prove a consideration for the notes. To have gone into the history of the claim would have been useless. Therefore the testimony was rightfully excluded.

Defendant, according to plaintiff's proof, made certain oral promises to the effect that he would take care of the Dickson paper. With respect to that evidence the jury was instructed that it "was received for what you may deem it worth in aiding you in determining what the agreement or contract of settlement was on August 18, 1916. You may consider it for what it is worth in throwing light upon that transaction and what that transaction really was." It is not at all clear, as appellant contends, that by that language the jury was prevented from considering his preceding promises in connection with defendant's claim that the notes were signed under duress. But if, at the time the charge was delivered, it seemed to counsel that it might be so understood by the jury, it is one of those inadvertent inaccuracies of statement to which the attention of the trial court should have been invited at the time. That was not done and error cannot now be predicated upon the language in question. The order appealed from is affirmed.

DIBELL, J. (dissenting.)
I dissent.