H. R. DAVIDSON, Appellee, v. WALTER BRADFORD, Appellant.

INTOXICATING LIQUORS: Abatement—Decree Void in Part—Effect. An order of abatement based on a conviction on an indictment which charges an intoxicating liquor nuisance is void in so far as it directs the closing of premises which are *wholly different from those specifically charged in the indictment,* even though they belong to the same party; and an abatement bond executed under threat to immediately close such other and different premises is likewise void.

Headnote 1: 33 C. J. p. 699.

*Appeal from Van Buren District Court.*—W. M. WALKER, Judge.

MARCH 8, 1927.

Action on a bond given for the abatement of a liquor nuisance. The facts appear in the opinion. The defendant appeals from a judgment against him.—*Reversed.*

*A. L. Heminger* and *J. C. Calhoun,* for appellant.

*Emily L. Newbold,* County Attorney, for appellee.

VERMILION, J.—Certain material facts are not in dispute. The appellant and one Dell Robinson were jointly indicted by the grand jury of Van Buren County for maintaining a liquor nuisance. It was alleged in the indictment that the offense was committed by the use of "a certain building, to wit, the summer kitchen near the dwelling house where the defendants reside, on the Walter Bradford farm in Van Buren County, Iowa, for the purpose of manufacturing intoxicating liquor." On October 16, 1924, Robinson entered a plea of guilty to the indictment, and, on motion of the county attorney, the charge against appellant was dismissed. On October 18, 1924, judgment was

entered against Robinson on his plea of guilty, adjudging him
to pay a fine, and the court found "that the liquor, mash, still,
and utensils now in the custody of the sheriff and involved in
this cause were in operation on, and were taken by, the sheriff
from the following described premises, to wit:" Here appears
the description by government subdivisions of certain land in
Sections 11, 12, and 13, Township 68, Range 9, in Van Buren
County, which is conceded to amount to 460 acres. The judg-
ment proceeded:

"It is further ordered that said above described premises be
closed and abated, and all persons on said premises be excluded
therefrom, and that all buildings thereon be closed, barred, or
nailed up; that said premises be closed or abated as provided by
law for a period of one year, and that a writ of abatement and
commitment issue forthwith."

On October 20th following, the court entered an order fix-
ing the amount of the bond to supersede the abatement order at
$4,000. On the last named date, the appellant executed the un-
dertaking in suit. It is a bond running to the state, in the sum
of $4,000, which, after reciting the indictment of Robinson, his
plea of guilty, and the judgment thereon, that the indictment
charged Robinson with having committed the crime on the
premises described in the indictment, the finding of the court
that "the liquor, mash, still, and utensils" involved were "in
operation" on the premises described in the order of abate-
ment, and the entering of the latter order, is conditioned that
the obligor will immediately abate the nuisance and prevent the
same from being established within one year.

Within a year from the execution of the bond, Robinson, his
wife, and appellant were indicted for maintaining a liquor nui-
sance by keeping a still and certain materials intended for and
capable of being used in the manufacture of intoxicating liquor
"in the upstairs part of the dwelling house in which the defend-
ants live, said dwelling house being situated on the Walter Brad-
ford premises in Sections 11, 12, and 13 in Township 68 north,
Range 9 west, Van Buren County, Iowa." Robinson pleaded
guilty to this indictment, and was duly sentenced; and the
charge against appellant appears to have been dismissed. This
action was then brought, for a breach of the condition of the

bond given by appellant to secure the release of his property from the order of abatement under the former indictment.

The land particularly described in the order of abatement belongs to appellant, and consists, as has been said, of 460 acres. It lies in one body, but is divided by a public road. There are two sets of improvements on the land, each consisting of a dwelling and outbuildings, located about a mile apart, and separated by the road. Robinson is the son-in-law of the appellant. During all the time in question, the appellant, Robinson, and the latter's wife resided in one of the dwellings, and 60 acres of the land and the other improvements were rented to appellant's son, who, with his family, resided thereon.

Section 2408, Code of 1897, the law in force at the time the order of abatement was entered, provided, in part, as follows:

"If the existence of the nuisance be established in a civil or criminal action, an order of abatement shall be entered as a part of the judgment in the case; which order shall direct the destruction of the liquor, the removal from the building or place of all fixtures, furniture, vessels or movable property used in any way in conducting the unlawful business and sale thereof, in the manner provided for the sale of chattels under execution, and the effectual closing of the building, erection or place against its use for any purpose prohibited in this chapter, and so keeping it for a period of one year, unless sooner released."

See Section 2032, Code of 1924.

Section 2410, Code Supplement, 1913, provided, in part:

"If the owner appears and pays all costs of the proceeding, and files a bond with sureties to be approved by the clerk in the full value of the property, to be ascertained by the court, or, in vacation, by the clerk, auditor and treasurer of the county, conditioned that he will immediately abate said nuisance and prevent the same from being established or kept therein within a period of one year thereafter, the court, or, in vacation, the judge, may, if satisfied of his good faith, order the premises closed under the order of abatement to be delivered to said owner, and said order of abatement canceled so far as the same may relate to said property."

See Section 2036, Code of 1924.

The charge against appellant in the first indictment had been dismissed, and he was not a party to the proceedings at

the time the order of abatement was entered. Because of the conclusion reached upon another feature of the case, however, we do not deem it necessary to determine whether, under an indictment for maintaining a liquor nuisance against one not the owner of the premises, an order of abatement may be entered, closing the premises for one year, under the provisions of Section 2032, Code of 1924; or whether, when such an order is entered, and the owner "appears" and gives the bond provided for in Section 2036, Code of 1924, he is in a position to urge the fact that he was not a party to the proceeding under the indictment in defense of an action for a breach of the bond.

The statute requires, where the existence of a nuisance is established in a civil or criminal proceeding, that an order of abatement shall be entered as a part of the judgment, which shall direct, among other things, the effectual closing of the "building, erection or place" against its use for any purpose prohibited by the statute. We have held that this requires the closing of the building for all purposes. *McCoy v. Clark*, 109 Iowa 464; *Lewis v. Brennan*, 141 Iowa 585. The first indictment alleged that the nuisance was maintained in a "summer kitchen near the dwelling house where the defendants reside, on the Walter Bradford farm." Again, we have no occasion to consider whether, and, if so, to what extent, an order of abatement of a liquor nuisance alleged to have been maintained in a particular building may cover land not actually occupied by the building constituting the nuisance, or other adjacent buildings used in connection therewith. The undisputed facts in this case do not require the observance of the nice distinctions that might conceivably arise in such a situation. See *State v. Shackleford*, 198 Iowa 752. The instant order of abatement, under a judgment establishing the existence of a nuisance in a building particularly described, directed the "closing" of 460 acres of land belonging to appellant, the exclusion of all persons therefrom, and the closing of all buildings thereon. It appears, without dispute, that a tract of 60 acres of the land described in the order was physically separated by a public road from that where the nuisance was maintained, and that its use was entirely disassociated therefrom by the fact that it was rented to and occupied by a tenant, who had no connection whatever with the nuisance. The effect of the order was not

only to exclude appellant and all others from any use of 400 acres of land in the possession of appellant, but to exclude his tenant from the land and buildings occupied by him. To the latter extent, at least, the order covered premises not described in the indictment, and not in any manner connected with the nuisance the existence of which was established in the proceedings under the indictment.

While it is unnecessary to particularly describe in the indictment the location of the building or place where the alleged nuisance was maintained, in order to sustain a conviction, it is doubtless true that no order of abatement could be entered unless the indictment did allege the particular location of the nuisance. *State v. Waltz,* 74 Iowa 610; *State v. Manatt,* 84 Iowa 621; *State v. Schuler,* 109 Iowa 111; *State v. Shackleford,* supra. The indictment having particularly described the location of the nuisance, the judgment of conviction against Robinson on his plea of guilty established only the existence of the nuisance so described. *State v. Manatt,* supra. The court had jurisdiction, under the statute, to declare that a nuisance existed in the building described in the indictment under which Robinson was convicted, and for the present discussion it may be conceded, to also order it abated. To what extent it might include land or buildings used in connection therewith we do not determine. It is sufficient for the present purpose to say that it had no jurisdiction to so include, merely because it belonged to the same owner, land and other buildings not covered by the indictment, which were in the possession of a tenant who had no connection with the nuisance, and which were not so used; and that, to that extent, at least, the order of abatement was void. As bearing on the proposition stated, see *American T. & S. Co. v. Gottstein,* 123 Iowa 267; *Munday v. Vail,* 34 N. J. Law 418; *Gille v. Emmons,* 58 Kan. 118 (48 Pac. 569); *Belford v. Woodward,* 158 Ill. 122 (41 N. E. 1097); *McFadden v. Ross,* 108 Ind. 512 (8 N. E. 161); *Nero v. Brooks,* 116 Okla. 279 (244 Pac. 588); *Oregon Mortgage Co. v. Kunneke,* 76 Mont. 117 (245 Pac. 539); *Reynolds v. Stockton,* 140 U. S. 254 (35 L. Ed. 464).

In *State v. Hufford,* 28 Iowa 391, we held void an appearance bond given before a magistrate where the information did not allege that the defendant had been charged with a crime in the county and state where it was alleged to have been com-

mitted. An official bond exacted of one without authority is void for want of consideration. *State v. Heisey,* 56 Iowa 404; *Hoeg v. Pine,* 143 Iowa 243. The United States Supreme Court, in *Pacific Nat. Bank v. Mixter,* 124 U. S. 721 (31 L. Ed. 567), held, where there was an illegal and void attachment, that a bond given to secure its dissolution was void.

Whether the doctrine so stated would be applicable here, where the order of abatement was valid in so far as it related to the building where the nuisance was alleged in the indictment to have been maintained, and the bond would be invalid merely because the order was void in part, we need not inquire.

The order was clearly void so far as it directed the closing of premises that by no possible construction could be found to be included in the description of the nuisance set out in the indictment. The bond was given under what amounted to a threat of immediate execution of the order by closing and nailing up the doors of all the buildings and the gates on the entire 460 acres, and the complete exclusion of appellant and all other persons therefrom.

The appellant testified that, on the day he signed the bond (which was the same day the order of abatement was entered), the sheriff read the order to him, and that he had never before heard of it. He testified:

"Well, he said he would nail my doors up; and the barn, and shut the gates up, and nail them. I asked him what I would do with the stock; he didn't say anything about them. Q. Did he say whether or not you and your family would be excluded from the entire farm? A. He said we would."

The sheriff testified:

"I think Mr. Bradford asked me what the absolute meaning of it meant, and I told him. I told him he could put up a bond, I presume, and get the abatement released."

On cross-examination, he testified that, if appellant had not given a bond, he would have excluded appellant and his family from the entire 460 acres, and have nailed up the buildings and gates.

By the threatened complete execution of the partially void order, appellant was put in a position where both he and his tenant would be excluded from, and deprived of, the use of property not legally subject to the order of abatement, or of

securing its release by the giving of a bond preventing entirely its execution. The situation would not have been different in that respect if the order had been wholly void. That the threatened execution of void process by which one's property will be injured or withheld is such duress as will invalidate an agreement through which the release of the property is secured, is well settled by authority. There may be such duress of property as to avoid a contract or payment. *Pembroke v. Hayes*, 114 Iowa 576. This may be true as to real estate. *Joannin v. Ogilvie*, 49 Minn. 564 (52 N. W. 217). In *De Graff v. County of Ramsey*, 46 Minn. 319 (48 N. W. 1135), the court said:

"There is a class of cases where, although there be a legal remedy, his situation or the situation of his property is such that the legal remedy would not be adequate to protect him from irreparable prejudice,—where the circumstances and the necessity to protect himself or his property otherwise than by resort to the legal remedy may operate as a stress or coercion upon him to comply with the illegal demand. In such cases his act will be deemed to have been done under duress, and not of his free will."

In 13 Corpus Juris 403, it is said:

"Where the parties are not at arm's length, but one of them is in a position to dictate, the courts will treat agreements which are influenced by threats of injury to, or the withholding of, property as made under duress. * * * And the position of a public officer is generally such that persons acceding to illegal exactions on his part may be said to do so under duress."

We are of the opinion that the facts of the case bring it within the rule stated; that the bond was executed under duress; and that appellant is not liable thereon. The judgment is—*Reversed.*

EVANS, C. J., and STEVENS and FAVILLE, JJ., concur.