*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0875**

Viele Contracting, Inc.,
Appellant,

vs.

Performance Pipelining, Inc.,
Respondent

**Filed May 2, 2016
Affirmed
Worke, Judge**

St. Louis County District Court
File No. 69DU-CV-12-2795

Thomas M. Skare, Cloquet, Minnesota (for appellant)

Scott A. Witty, Duluth, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Johnson, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant asserts that the district court erred and abused its discretion by rejecting appellant's voluntary-payment defense. We affirm.

**FACTS**

Respondent Performance Pipelining, Inc. (PPI) specializes in rehabilitating pipelines and conduits. In February 2006, the City of Duluth (city) released specifications for a sewer-pipe-rehabilitation project. PPI consulted with appellant Viele Contracting, Inc. (VCI), a corporation specializing in excavation. VCI submitted a proposal, detailing what it would charge PPI for mobilization and excavation. With this information, PPI submitted its bid, and the city awarded PPI the project.

PPI hired VCI to perform excavations. During the project, VCI submitted numerous invoices to PPI. PPI's accountant was in charge of validating the invoices by comparing the amount charged to the proposal. The accountant then delivered checks to Shaun Flanery, the president of PPI, for his signature. Flanery did not compare the invoices to VCI's proposal before signing a check.

In April 2008, Flanery e-mailed Desiree Govze, a VCI employee in charge of billing, expressing concern that the proposed prices differed from the invoiced prices and that double billing occurred. Govze denied any double billing and claimed that the invoices were accurate, explaining that the extra expense could be for work that fell outside of the proposal. Flanery continued to make payments to VCI because the companies had a good relationship, he did not realize how extensive the billing issue was, and he thought that VCI made a clerical error.

In September 2012, VCI filed a complaint against PPI, alleging that PPI breached the parties' contract by failing to pay for labor and materials. PPI filed a counterclaim, alleging breach of contract and unjust enrichment, asserting that VCI overcharged PPI.

2

In October 2014, a court trial commenced. Flanery testified that PPI's accountant did not compare the invoices with the proposal, he was not aware of the discrepancies when he approved payment, and he would not have approved payment if he knew of the discrepancies. Flanery stated that he did not notice the overcharges sooner because PPI was understaffed and experiencing a phenomenal period of growth. Flanery also stated that, at the time, he did not understand how extensive the billing issue was.

After trial, the parties submitted written closing arguments, and VCI asserted a voluntary-payment defense to PPI's counterclaim. The district court entered judgment in favor of PPI and stated: "Here, the undisputed testimony is that PPI was unaware that VCI was not billing in accordance with the parties' contract. Therefore, PPI did not have full knowledge of the facts and the doctrine of voluntary payment is inapplicable." This appeal follows.

## DECISION

### *Factual finding*

VCI asserts that the district court clearly erred when it found that PPI was unaware that VCI was not billing in accordance with the parties' contract. A district court's factual findings are reviewed for clear error. *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 24 (Minn. 2011); Minn. R. Civ. P. 52.01 ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses."). This court views the evidence "in the light most favorable to the verdict." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013). A factual finding is clearly erroneous if it "is palpably and

3

manifestly against the weight of the evidence." *Kral v. Boesch*, 557 N.W.2d 597, 598 (Minn. App. 1996). The district court's factual findings will not be disturbed if supported by reasonable evidence. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999).

Viewed in the light most favorable to the verdict, the record supports the district court's factual finding. Flanery testified that PPI did not compare VCI's invoices to its proposal before making payments, and he was not aware that VCI's invoices were inconsistent with the proposal when he approved payment. Flanery would not have approved payment if he knew that VCI overcharged, and PPI did not identify the overcharges earlier because it was understaffed and growing rapidly.

Flanery questioned VCI's invoices in 2007. But he also testified that he continued to pay VCI because the companies had a good relationship, he thought that VCI simply made a clerical error that would be fixed later, and he did not understand the extent of the overcharges. Additionally, Flanery testified that PPI's accountant was in charge of validating the invoices before preparing a check, and that the accountant did not inform him that VCI's invoices were inaccurate.

Moreover, as recognized by the district court, many of VCI's invoices lack details describing the work performed. The invoices containing an inadequate description required PPI to subsequently compare VCI's invoices to the city engineer's project notes. Flanery testified that, upon further review, he discovered that the work charged by VCI was not always consistent with the work described by the city engineer. Viewing the

4

evidence in the light most favorable to the verdict, the district court's factual finding is not clearly erroneous.

***Voluntary-payment doctrine***

VCI asserts that the district court erred and abused its discretion when it rejected VCI's voluntary-payment defense. On appeal from a bench trial, this court does not reconcile conflicting evidence. *Porch v. Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn. App. 2002), *review denied* (Minn. June 26, 2002). But we need not give deference to the district court's decision on a purely legal issue. *Id.* "When reviewing mixed questions of law and fact, we correct erroneous applications of law, but accord the district court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard." *Id.* (quotation omitted). An abuse of discretion occurs when a district court "bases its decision on an erroneous view of the law or when it renders a decision that is contrary to the facts in the record." *State by Swanson v. 3M Co.*, 845 N.W.2d 808, 816 (Minn. 2014).

"[M]oney paid voluntarily, *with full knowledge of the facts*, cannot be recovered back." *Joannin v. Ogilvie*, 49 Minn. 564, 566, 52 N.W. 217, 217 (1892) (emphasis added); *see Thomas Peebles & Co. v. Sherman*, 148 Minn. 282, 284, 181 N.W. 715, 716 (1921) ("One who makes a payment voluntarily cannot recover it back on the ground that he was under no legal obligation to make it.").

Here, the district court did not abuse its discretion by rejecting VCI's voluntary-payment defense. As previously stated, the district court found that PPI was unaware that VCI was not billing in accordance with the parties' contract, and that PPI did not have

full knowledge of the facts. The record supports the district court's finding. Flanery testified that he was unaware that the invoices for which he approved payment were not consistent with VCI's proposal. Flanery further testified that many of the invoices were difficult to interpret and that new information has come to light since he first questioned VCI's invoices. Flanery questioned VCI's billing in 2007, but he testified that he concluded that VCI made a clerical error. The district court's finding is not clearly erroneous. Therefore, VCI's voluntary-payment defense fails. *See Joannin*, 49 Minn. at 566, 52 N.W. at 217 (stating that the voluntary-payment doctrine applies to payments made "voluntarily, with full knowledge of the facts"); *see also Call v. Terminal Supply Co.*, 171 Minn. 274, 276, 213 N.W. 917, 918 (1927) (stating that the voluntary-payment doctrine does not apply when "the payment is made . . . under a mistake as to an essential fact").

VCI argues that PPI did not lack knowledge because it had the information necessary to validate the invoices prior to submitting payment. We are not persuaded. *See Fiebelkorn v. Ikon Office Sols., Inc.*, 668 F. Supp. 2d 1178, 1191 (D. Minn. 2009) (stating that voluntary-payment doctrine did not apply, even when defendant "had access to all of the information necessary"); *Sherrill, Jr. v. Frank Morris Pontiac-Buick-GMC, Inc.*, 366 So. 2d 251, 257 (Ala. 1978) ("[O]ne who receives payment made under mistake by the payor is not relieved of liability simply because the payor could have discovered the facts but was not diligent in doing so."); *Couper v. Metro. Life Ins. Co.*, 250 Mich. 540, 544, 230 N.W. 929, 931 (Mich. 1930) (stating that payment may be recovered despite "lack of investigation"); *Pitman v. City of Columbia*, 309 S.W.3d 395, 404 (Mo.

6

Ct. App. 2010) ("[P]ossession of information necessary to determine that payment is mistaken does not constitute voluntary payment made with full knowledge of the facts.").

VCI's argument also conflicts with the Restatement (Third) of Restitution & Unjust Enrichment § 6 cmt. e (2011), which states:

> The restitution claim to recover a payment in excess of an underlying liability—a claim that is frequently described in terms of mistaken payment—meets an important limitation in the so-called voluntary payment rule. The rule appears in frequent judicial statements to the effect that "money voluntarily paid with knowledge of the facts cannot be recovered back." *Statements of this kind must be treated with caution*. In a business setting, it is at least paradoxical to suppose that the overpayment of an asserted (or any payment of a nonexistent) liability could ever be "voluntary," and the proper operation of the voluntary payment rule must be realistic rather than artificial. The rule does not, for example, impute knowledge of relevant circumstances of which the payor is not in fact aware, describing as "voluntary" a payment that was actually the consequence of negligence or inadvertence.

(emphasis added).

Typically, the voluntary-payment doctrine is applicable "in the context of a payment made to settle a claim." *Id.*; *see CSX Transp., Inc. v. Appalachian Railcar Servs., Inc.*, 509 F.3d 384, 387 (7th Cir. 2007) ("The point of the voluntary-payment doctrine is to prevent recovery when a transfer was made pursuant to an agreement of the parties that allocated between them the risk of any later-discovered mistake."). A proper recitation of the rule is that "money voluntarily paid *in the face of a recognized uncertainty as to the existence or extent of the payor's obligation to the recipient* may not be recovered, on the ground of 'mistake,' merely because the payment is subsequently

revealed to have exceeded the true amount of the underlying obligation." Restatement (Third) of Restitution & Unjust Enrichment § 6 cmt. e. The Restatement also acknowledges that a party acting "carelessly or on the basis of imperfect information does not thereby bear the associated risk of mistake." Restatement (Third) of Restitution & Unjust Enrichment § 5 cmt. b(2) (2011). We are not persuaded that PPI voluntarily paid VCI "in the face of a recognized uncertainty." Therefore, the district court did not abuse its discretion by rejecting VCI's voluntary-payment defense.

**Affirmed.**